## UNITED STATES v. BORGIS.
### No. 10074.

United States Court of Appeals
Seventh Circuit.

June 5, 1950.

John De Grazia, Chicago, Ill., James F. Lyons, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Attorney, Joseph E. Tobin, Asst. U. S. Attorney, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

Tony Borgis, defendant-appellant, seeks by this appeal to reverse a judgment entered by the District Court after a trial without jury, by which he was sentenced to be committed for the term of one year and one day.

He contends that the findings and judgment of the court are contrary to the facts, and that the judgment is contrary to the law.

The indictment upon which he was prosecuted contained 38 counts. In the odd-numbered counts the defendant was charged with aiding, assisting and advising in the preparation of false and fraudulent income tax returns for individuals named in such odd-numbered counts. These returns, it was charged, were prepared for and filed with the Collector of Internal Revenue for the first district of Chicago. His acts were charged to be a violation of section 3793(b) (1) of the Internal Revenue Code of the United States. 26 U.S.C.A. § 3793(b) (1).

Said section of the Code makes it a felony for anyone to aid, assist, cause or advise in the preparation of, or in the presentation of a false return, affidavit, claim, return or document in connection with any matter arising under the Internal Revenue Code.

The even-numbered counts in the indictment charged the defendant with a wilful attempt to defeat and evade taxes imposed by the Internal Revenue Code upon individuals named in such even-numbered counts. His acts were charged to be in violation of section 145 of the Code.

This section makes it a felony for any person wilfully to attempt in any manner to evade or defeat any tax imposed by the Code, or the payment thereof. 26 U.S.C.A. § 145.

Evidence was adduced by the Government in regard to six income tax returns of persons named in the various counts of the indictment. All were prepared by the defendant. In five instances, exemptions, which the taxpayer was allowed to claim under the law, were improperly increased by naming as dependents of the taxpayer certain relatives, or others, who were not in fact dependents.

One of the taxpayers named, Harry Hall, testified that his tax return for 1946 was prepared by the defendant; that he was entitled to dependency exemptions for himself and his wife; that defendant asked him whether or not there was anybody else he could claim as a dependent; that after some conversation the defendant added to the return the names of two persons, Russell, as a son, and Christina, a grandchild; that such persons were not in fact dependents of taxpayer; and that defendant was so informed.

Joseph Martinez, another taxpayer, whose wife also appeared as a witness, testified that defendant prepared his income tax return for 1946; that the names of his mother and his aunt were placed therein as dependents; that he did not tell the defendant that he supported them, that he did not tell him to name them as dependents in his return; and that he merely sent them whatever he could once in a while. His wife testified she was present when the return was prepared; that she told defendant he could not claim her mother-in-law as a dependent, that the mother-in-law was being supported by her own husband; and that defendant said to her: "I am writing this."

A third taxpayer, Josephine Rivera, testified that defendant prepared the 1946 income tax return for her husband and herself; that they told defendant the only dependent they had was the father of her husband; that the defendant named as dependents the people who lived with the husband's father and said that as long as these people lived with the father they were sharing the money sent to him; defendant told them the Government had plenty of money; and that they did not tell the defendant they were supporting the people named.

Another taxpayer, Harry Burke, testified that the defendant prepared his income tax

return; that he was separated from his wife and not supporting her; that his only dependents were his mother and father; that he told defendant he had other relatives but only sent them small sums during the holidays; that the defendant mailed his tax return to the Internal Revenue office, Chicago, Illinois.

Armando Alvera testified that defendant prepared his income tax return for 1946; that he told defendant he had no family or dependents; that he told him he had a brother and a niece; that he did not tell him to name the brother and niece as dependents.

Taxpayer Luis Medina testified that defendant prepared his income tax return for 1946; that defendant asked him if he had any brothers or sisters; that he gave their names but told defendant he did not support them; that defendant asked for more names, that he had no more; that when he objected to paying $7.00 for filling out the return, the defendant said: "I have saved you $200."

In the case of the last taxpayers about whom testimony was offered, their daughter testified that she procured defendant to fill out the tax return of her parents Pedro and Elina Martinez, that defendant asked her about contributions; that she gave him an estimate of their amount; that defendant put $150 for church contributions which she thought was too much; that defendant said: "You don't have to worry about that leave it to me." That defendant also prepared an income tax return for her parents in February 1947; that defendant added the name of her aunt in Mexico as a dependent.

It appears that all income tax returns, about which testimony was offered, directed that any refund of monies withheld from taxes, wages or salary due taxpayer should be remitted to the taxpayer by the Collector.

A tax accountant from the Internal Revenue Department testified that the accounts of the taxpayers, named in the Government's evidence, were varied in the following amounts when the false claims for deductions were eliminated:

Hall's return showed four dependents and $80 due; the corrected return showed two dependents and a tax of $270.

The return of Joseph Martinez showed no tax and six dependents; the corrected return showed four dependents and a tax of $171.59. The audit of the return of Pedro and Elina Martinez reduced the amount of contributions claimed and increased the tax due from $24.33 to $61.94.

On the Rivera return eight dependents were claimed and no tax due. As corrected there were two dependents and a tax due of $318.

The return of Harry Burke showed five dependents and a tax of $145; as corrected with three dependents the tax due would be $350.

In the case of Armando Olivia three dependents were claimed and $102 shown due. There should have been one dependent and a tax due of $292.

The return of Luis Medina showed four dependents and no tax. As corrected there would be only one dependent and the tax due would amount to $266.

The defendant testified that he did not tell the Government witnesses to put in their income tax returns the names of dependents they did not have. He claimed that for those without money he prepared income tax returns for nothing, that in most cases he gets two or three dollars for preparing a return. That he was president of an organization to assist people to get relief and to train them for citizenship. Many character witnesses appeared on his behalf and testified that he bore an excellent reputation.

■ It appears to us that the evidence produced by the Government is amply sufficient to establish the fact that the defendant did wilfully and knowingly prepare and file with the Collector of Internal Revenue false and fraudulent income tax returns for persons named in various counts of the indictment at bar. There is no merit in the contention that the finding and judgment of guilty is against the weight of the evidence.

In support of his proposition that the findings of the court are against the law,

the defendant-appellant urges: All the witnesses who appeared for the Government in the case owed nothing to the Government because taxes had been withheld by their respective employers. He further urges that there was no loss to the Government because there is no evidence that any taxpayer involved received a refund. In support, he cited the case of Gleckman v. United States, 8 Cir., 80 F.2d 394, and Battjes v. United States, 6 Cir., 172 F.2d 1.

In examining these contentions, it must be borne in mind that the defendant in the case at bar is not charged with making a false return of his own income but with falsifying the income tax returns of other persons. The applicable statute in such charge is section 3793(b) (1) of the Internal Revenue Code, which provides that the filing or assistance in filing such false returns shall be a crime whether or not such falsity or fraud is with the knowledge or consent of the person required to make such return.

The Court of Appeals in and for the Second Circuit said in United States v. Kelley, 105 F.2d 912, on page 917: " * * * The purpose (of the Statute) was very plainly to reach the advisers of taxpayers who got up their returns, and who might wish to keep down the taxes because of the credit they would get with their principals, who might be altogether innocent."

In our own Circuit it was said in a somewhat similar situation: "Nor is it any defect (in the indictment) that the tax attempted to be evaded was that of another. The statute is so framed as to make liable any person who attempts willfully and unlawfully to evade the tax of himself or of any other person." Tinkoff v. United States, 86 F.2d 868–876.

Neither of the cases cited by defendant-appellant is at all comparable to the case here under review. Appellant merely cites the cases, he does not discuss their holdings or show their applicability to the case before us.

It is true that in the case of each taxpayer here involved, the United States Government had in its possession or control certain sums of money which had been withheld from wages or salaries due the various taxpayers by their employers. But it is also true that, until each individual had made some return, the Government could not compute his or her tax. Under such circumstances the filing of a false return, or an untrue claim for exemption, is an attempt to evade a tax due the United States. The fact that the attempt was unsuccessful, that no refund was actually shown to have been made by the Government, does not destroy the criminality of the attempt.

There is one other matter requiring notice. It appears that the defendant was found guilty on May 27, 1949. The case was then referred to the Probation Office for a pre-sentence investigation.

On October 17, 1949, a hearing was had on defendant's application for probation. The motion was denied and the defendant sentenced for one year and one day. The report of the proceedings on the application for probation is incorporated in the record filed in this court, and various errors are assigned to the admission of evidence therein.

The suspension of sentence in a criminal case and the placing of the defendant on probation is a privilege which the District Court may in the exercise of its discretion accord to a defendant but which cannot be demanded as a right. The action of the court in refusing to grant the privilege is accordingly not reviewable on appeal except possibly for arbitrary or capricious action on the part of the District Judge which amounts to an abuse of discretion. United States v. White, 3 Cir., 147 F.2d 603; Burns v. United States, 287 U.S. 216, 53 S. Ct. 154, 77 L.Ed. 266.

We see no necessity for reviewing the proceedings on application for probation in the case at bar.

The judgment of the District Court is affirmed.