UNITED STATES of America, Appellee,

v.

Elon Kevan ROWLEE, II, and the New York Patriots Society For Individual Liberty Association, Defendants–Appellants.

No. 581, Docket 88–1143.

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1989.

Decided March 19, 1990.

Jersey M. Green, Denver, Colo. (Orten & Hindman, P.C., Denver, Colo., of counsel), for defendants-appellants.

Craig A. Benedict, Asst. U.S. Atty., N.D. N.Y., Syracuse, N.Y. (Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., Syracuse, N.Y., of counsel), for appellee.

Before VAN GRAAFEILAND, PIERCE and MINER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Elon Kevan Rowlee, II and The New York Patriots Society for Individual Liberty Association (the "Society") appeal from a judgment of the United States District Court for the Northern District of New York dated February 16, 1988, which followed a jury trial before Judge McCurn. The judgment convicted both defendants of conspiracy to defraud the United States by impeding the Internal Revenue Service in the collection of revenue, 18 U.S.C. § 371, aiding and assisting the submission of false documents to the Internal Revenue Service, 26 U.S.C. § 7206(2) (Rowlee on fourteen counts, the Society on twenty-four counts), and six counts each of mail fraud, 18 U.S.C. §§ 1341 and 2. We affirm.

Rowlee formed the Society in 1980 and, shortly thereafter, began to work full-time as its executive director. The Society's activities dealt almost exclusively with promoting the evasion of taxes and the frustration of the work of the IRS. To attract interest and membership in the Society and his theories, Rowlee advertised in newspapers. The advertisements informed readers that payment of income taxes was voluntary, that the readers could "STOP THE THIEVIN IRS" from auditing one's taxes or charging one with failure to file, and that Rowlee could provide information on

how to secure grand jury indictments against IRS agents. Through these advertisements and word of mouth, Rowlee found students for the Society's classes.

In courses conducted at Rowlee's home, students were taught that wages were not income and hence not subject to income taxation, that the filing of income tax returns was voluntary, that Title 26 of the United States Code never was enacted into law, and that money not tied to a gold standard had no value. Rowlee showed students how to prepare withholding exemption certificates (W–4 forms) in which they claimed exempt "wage earner" status. He provided handouts and step-by-step instructions on how to prevent employers from withholding both state and federal income taxes.

Upon completion of the courses, Rowlee invited the students to join the Society and to attend secret Society meetings. At these meetings, Rowlee sold W–4 packets, which included tax forms and legal memoranda purporting to justify wage-earner exemption claims. He also sold "interrogatories" which he claimed could stop an IRS audit, disable the IRS from prosecuting for failure to file, make a "liar and fool" out of the tax court, and set the ground work for obtaining an indictment against local IRS directors.

Outside of the meetings, Rowlee served as a tax adviser for ninety-two Society members, all of whom submitted false W–4 forms, failed to file returns, or did both. He maintained files on each client, in which he kept records of the IRS activity and copies of the correspondence which he prepared. His basic strategy in such cases was to ghost-author letters asking numerous questions of the IRS agent handling a case. The answers to these questions would prompt additional letters posing additional questions. This prolongation of correspondence, concerned, as it was, largely with irrelevant matters, was intended to impede the resolution of the case and to form the basis for a good faith mistake of law defense when IRS agents refused to respond specifically to each frivolous inquiry. Rowlee received cash payments for these services, which he did not record.

Rowlee's files contained numerous decisions interpreting the Constitution and the Internal Revenue Code on issues relevant to his conduct. Rowlee, himself, was involved in two of the cases, in both of which his theory that wages were not taxable as income was soundly rejected. *See Rowlee v. Commissioner,* 80 T.C. 1111 (1983), and *Collorafi v. United States,* No. 83 Civ. 1033 (E.D.N.Y. December 2, 1983). Rowlee's files also contained numerous letters from IRS officials stating and interpreting tax law.

Although there was some evidence that Rowlee had advised Society members to see an attorney or accountant before relying on his opinions, there was ample proof that members relied on Rowlee's teachings and instructions in filing exempt W–4 forms. The Government also proved that Rowlee urged Society members to file suits against the IRS and to make numerous Freedom of Information Act requests so as to waste the agency's time on frivolous matters and impede its functions.

Appellants' principal argument in both the district court and this court is that they were simply exercising their First Amendment right of free speech. Relying principally on the "incitement to imminent lawless action" holding of *Brandenburg v. Ohio,* 395 U.S. 444, 447–49, 89 S.Ct. 1827, 1829–31, 23 L.Ed.2d 430 (1969),[1] they contend that the district court did not charge

---

**1.** *Brandenburg* involved the alleged violation of an Ohio syndicalism statute by a Ku Klux Klan orator who spoke of the possibility of future radical action. The Court held that "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* at 447, 89 S.Ct. at 1829. We are not concerned in the instant case with criminal syndicalism statutes which, by definition, deal with the teaching and promoting of terrorism, force and violence for the purpose of accomplishing political or industrial change. *Black's Law Dictionary* 1300 (5th ed.1979); *see United States v. Moss,* 604 F.2d 569, 571 (8th Cir.1979), *cert. denied,* 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980).

the jury correctly concerning the nature and extent of their First Amendment right. We disagree. The district court's instructions with respect to the First Amendment differed with respect to each of the three statutory violations charged in the indictment. We find no reversible error in any of the three.

## THE CONSPIRACY COUNT

■ Title 18, section 371, of the United States Code makes it unlawful for two or more persons to conspire to defraud the United States or any agency thereof. The district court did not err in instructing the jury that a First Amendment defense was not applicable to the charge of violating this statute, which, the court said, punishes the act of conspiracy and does not implicate speech. " 'It rarely has been suggested that the constitutional freedom for speech ... extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute.' " *New York v. Ferber*, 458 U.S. 747, 761–62, 102 S.Ct. 3348, 3356–57, 73 L.Ed.2d 1113 (1982) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498, 69 S.Ct. 684, 688, 93 L.Ed. 834 (1949)). Put another way, "[S]peech is not protected by the First Amendment when it is the very vehicle of the crime itself. *E.g.*, ... 18 U.S.C. §§ 371–372 (1964) (Conspiracy)." *United States v. Varani*, 435 F.2d 758, 762 (6th Cir.1970).

Appellants were convicted of the act of conspiracy, an act forbidden by section 371. Their conduct was not protected by the First Amendment merely because, in part, it may have involved the use of language. "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). *See United States v. Daly*, 756 F.2d 1076, 1081–82 (5th Cir.), *cert. denied*, 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 558 (1985).

Appellants wisely do not challenge their convictions on the conspiracy count.

## THE AIDING AND ASSISTING COUNTS

■ Section 7206(2) of Title 26 of the United States Code provides that any person who

[w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document ... shall be guilty of a felony....

To understand the meaning and intent of this statute, it is necessary to examine the almost identical language contained in section 3793(b)(1) of the 1939 Act (53 Stat. 468) and section 1114(c) of the 1926 Act (44 Stat. 116). As the courts have interpreted these statutes, they make liable any person who willfully attempts to evade payment of either his own tax or that of any other person. Congress did not intend to exempt anyone from punishment who actively endeavors to defeat a tax, "whatever his relationship to the taxpayer [might] be." *Tinkoff v. United States*, 86 F.2d 868, 876 (7th Cir.), *cert. denied*, 301 U.S. 689, 57 S.Ct. 795, 81 L.Ed. 1346 (1937). As Judge Learned Hand pointed out in *United States v. Kelley*, 105 F.2d 912, 917 (2d Cir.1939), the purpose of these statutes was "to reach the advisers of taxpayers who got up their returns, and who might wish to keep down the taxes because of the credit they would get with their principals, who might be altogether innocent." In other words, a person who violates section 7206(2) as an adviser is not merely an aider and abettor, as that term commonly is understood. If he attempts to accomplish the evasion of a tax payment, he becomes as much a principal as the taxpayer who owes the tax. *See United States v. Johnson*, 319 U.S. 503, 514–15, 63 S.Ct. 1233, 1238–39, 87 L.Ed.

1546 (1943). In fact, the guilt or innocence of the taxpayer for whom the return was filed is irrelevant to the question of the adviser's guilt. *See United States v. Conlin,* 551 F.2d 534, 536 (2d Cir.), *cert. denied,* 434 U.S. 831, 98 S.Ct. 114, 54 L.Ed.2d 91 (1977); *United States v. Jackson,* 452 F.2d 144, 147 (7th Cir.1971); *United States v. Warner,* 428 F.2d 730, 736 (8th Cir.), *cert. denied,* 400 U.S. 930, 91 S.Ct. 194, 27 L.Ed.2d 189 (1970); *United States v. Egenberg,* 441 F.2d 441, 444 (2d Cir.), *cert. denied,* 404 U.S. 994, 92 S.Ct. 530, 30 L.Ed.2d 546 (1971); *United States v. Borgis,* 182 F.2d 274, 277 (7th Cir.1950); *Maxfield v. United States,* 152 F.2d 593, 595 (9th Cir. 1945), *cert. denied,* 327 U.S. 794, 66 S.Ct. 821, 90 L.Ed. 1021 (1946); *United States v. Gruberg,* 493 F.Supp. 234, 243–44 (S.D. N.Y.1979). Of course, the application of section 7206(2) is not limited to tax preparers; it applies to all knowing participants in the fraud. *United States v. Crum,* 529 F.2d 1380, 1382 (9th Cir.1976); *United States v. Maius,* 378 F.2d 716, 718 (6th Cir.), *cert. denied,* 389 U.S. 905, 88 S.Ct. 216, 19 L.Ed.2d 219 (1967).

The consensus of this and every other circuit is that liability for a false or fraudulent tax return cannot be avoided by evoking the First Amendment. *Aschenbach v. United States,* 599 F.Supp. 588, 591 (D.Conn.1984); *Welch v. United States,* 750 F.2d 1101, 1108–10 (1st Cir.1985); *United States v. Malinowski,* 472 F.2d 850, 857–59 (3d Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973); *McKee v. United States,* 781 F.2d 1043, 1047 (4th Cir.), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3274, 91 L.Ed.2d 564 (1986); *United States v. Damon,* 676 F.2d 1060, 1063 n. 2 (5th Cir.1982); *Collett v. United States,* 781 F.2d 53, 54–55 (6th Cir.1985); *United States v. Kelley,* 864 F.2d 569, 576–77 (7th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 55, 107 L.Ed.2d 23 (1989); *Wall v. United States,* 756 F.2d 52, 53 (8th Cir. 1985); *Hudson v. United States,* 766 F.2d 1288, 1291–92 (9th Cir.1985); *Borgeson v. United States,* 757 F.2d 1071, 1073 (10th Cir.1985); *Ricket v. United States,* 773 F.2d 1214, 1215 (11th Cir.1985).

Although all Courts of Appeals reach the same result, they do not all do it by the same line of reasoning. Some of them say that the preparation of tax returns does not involve the First Amendment at all. *E.g., United States v. Kelley, supra,* 864 F.2d at 576–77 (actions that constitute more than mere advocacy not protected by First Amendment); *Welch v. United States, supra,* 750 F.2d at 1108 (noncompliance with federal tax laws afforded no protection under the First Amendment); *United States v. Damon, supra,* 676 F.2d at 1063 n. 2 ("Section 7206(2) does not reach constitutionally protected speech"); *United States v. Ness,* 652 F.2d 890, 892 (9th Cir.), *cert. denied,* 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed.2d 113 (1981) ("Tax violations are *not* a protected form of political dissent").

Other courts hold that, even if a defendant's First Amendment rights are to some extent abridged, the government's interest in maintaining a sound revenue system outweighs the defendant's free exercise of those rights. *E.g., Hudson v. United States, supra,* 766 F.2d at 1292 ("Even if appellant's conduct were entitled to first amendment protection, it is 'sufficiently outweighed by the broad public interest in maintaining a sound and administratively workable tax system'") (quoting *Kahn v. United States,* 753 F.2d 1208, 1217 (3d Cir.1985)); *Wall v. United States, supra,* 756 F.2d at 53 (necessities of revenue collection raise governmental interests sufficiently compelling to outweigh the free exercise rights of those who find the tax objectionable on bona fide religious grounds); *Aschenbach v. United States, supra,* 599 F.Supp. at 591 ("Even if plaintiff's First Amendment rights were abridged, the necessities of maintaining a revenue system raise a sufficient governmental interest sufficient to overrule these fundamental rights").

The court below apparently followed the lead of *United States v. Freeman,* 761 F.2d 549 (9th Cir.1985), *cert. denied,* 476 U.S. 1120, 106 S.Ct. 1982, 90 L.Ed.2d 664 (1986), which involved, in addition to nonprotected speech, speech that may have been protected. Freeman, a tax protester, conducted seminars in which, said the court, a jury might have found he "directed his comments at the unfairness of the tax

laws generally, without soliciting or counseling a violation of the law in an immediate sense." *Id.* at 551–52. Then Judge Kennedy, writing for the court, held that the trial court erred by instructing the jury that as to those counts the First Amendment was irrelevant. Citing *Brandenburg v. Ohio, supra,* 395 U.S. at 447–48, 89 S.Ct. at 1829–30, Judge Kennedy said that "the jury should have been charged that the expression was protected unless both the intent of the speaker and the tendency of his words was to produce or incite an imminent lawless act, *one likely to occur.*" *United States v. Freeman, supra,* 761 F.2d at 552 (emphasis supplied). To the extent that Freeman counseled and participated in the actual preparation of returns so as to become part of the crime itself, the court held that a First Amendment defense was foreclosed even if the presentation rested on words alone. *Id.*

In substance, that is how the district court in the instant case charged the jury. Because the charge in this form was favorable to the defendants, we affirm. However, we think it would have been better and made for a simpler and cleaner case if the district court had not referred to the First Amendment at all. To the extent that the concept of "imminent lawless action" has any role to play in this non-syndicalism case, it is incorporated sub silentio in section 7206(2), the statute that the defendants were charged with violating. If the defendants did not violate section 7206(2), the restrictions imposed by that statute did not violate their First Amendment rights. If they did violate section 7206(2), they were not protected by the First Amendment. Insofar as Rowlee commented generally on the tax laws during his seminars without aiding, assisting, procuring, counseling or advising the preparation or presentation of the alleged false or fraudulent tax documents, he did not violate section 7206(2). Accordingly, as to those comments, the question of First Amendment protection was redundant and irrelevant. Before the court below even discussed the First Amendment, it charged the jury that, in order to convict the defendants of violating section 7206(2), it had to find first that the defendants assisted,

presented, counseled, advised or caused the preparation or presentation of the W–4 forms or amended returns at issue in the case. Unless the jury made that finding, the defendants had to be acquitted on these counts. If their general comments did not violate section 7206(2), whether or not those comments were entitled to First Amendment protection was irrelevant. The district court's charge on this point simply complicated the case by requiring the jury to consider a duplicative and unnecessary issue and would better have been omitted.

Having undertaken to charge on the First Amendment, the district court correctly instructed the jury that, if the defendants urged the preparation and presentation of the false W–4's or false amended returns with the expectation that this advice would be heeded, the First Amendment afforded no defense.

## THE MAIL FRAUD COUNTS

■ The objection just voiced concerning the lack of relevance of the First Amendment to generalized comments not in violation of section 7206(2) applies with equal force to the violations of the mail fraud statute, 18 U.S.C. § 1341, and the aiding and abetting statute, 18 U.S.C. § 2. The district court charged the jury that the defendants did not commit mail fraud "merely because they wrote to newspapers, held meetings, placed advertisements or engaged in other activities to espouse their ideas about taxes and other matters." That being so, the question whether those activities were protected by the First Amendment again was irrelevant. The defendants either violated the mail fraud statute or they did not. If they did not, reference to the First Amendment only introduced an unnecessary complication into the case.

Moreover, appellants failed to demonstrate how the "incitement to imminent lawless action" required by *Brandenburg* can be applied in any reasonable manner to violations of the mail fraud statute. Mail fraud cases often involve long-term, slowly-developing wrongs, not "imminent lawless action." Imminence of mailing likewise is not essential to a mail fraud violation. *See*

*United States v. Beitscher*, 467 F.2d 269, 273 (10th Cir.1972). Indeed, the scheme to defraud need not even contemplate use of the mails as an essential element. "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954). Thus, in tax fraud cases, the mailing required by the statute may not take place until the Government sends out refund checks, a procedure that some taxpayers look upon as "long-term" indeed. *See United States v. Mangan*, 575 F.2d 32, 48–49 (2d Cir.), *cert. denied*, 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978); *United States v. Anderson*, 618 F.2d 487, 489–90 (8th Cir.1980).

Despite the foregoing comments, we affirm the defendants' conviction on the mail fraud counts also, because the charge on those counts was more favorable to the defendants than they were entitled to receive.

We have carefully considered appellants' other claims of error and find them of insufficient substance to merit discussion.

The judgment of the district court is AFFIRMED.