UNPUBLISHED

# UNITED STATES COURT OF APPEALS

### FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                              No. 00-4331

NELSON LEE JENNINGS,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry C. Morgan Jr., District Judge.
(CR-99-165)

Argued: June 7, 2001

Decided: November 14, 2002

Before LUTTIG, MOTZ, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** William P. Robinson, Jr., ROBINSON, NEELEY &
ANDERSON, Norfolk, Virginia, for Appellant. Stephen Westley
Haynie, Assistant United States Attorney, Norfolk, Virginia, for
Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Nor-
folk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

___

**OPINION**

PER CURIAM:

Nelson Jennings, a tax preparer, was convicted of 12 counts of willfully aiding or assisting in the preparation and presentation of false and fraudulent returns in violation of 26 U.S.C. § 7206(2). For the reasons that follow, we affirm.

I.

A computer program developed by the Internal Revenue Service ("IRS") uncovered an unusual pattern in a number of the tax returns prepared by Jennings. J.A. 34-35. The IRS reviewed approximately 90 returns, discovering that the itemized deductions on the returns were disproportionately high in relation to the adjusted gross income of the taxpayers. J.A. 36-37.

The IRS thereafter designated 23 returns for full investigation, including interviews with the taxpayers whose returns were selected. During the interviews, the taxpayers signed affidavits stating that they were not eligible for many of the deductions listed on the returns, that they did not review the returns carefully or provide Jennings with documentation to support the claimed deductions, and that they relied on Jennings' expertise in preparing the returns. Thus, contrary to the signed statement in their tax returns,[1] the taxpayers essentially denied any knowledge of the fraudulent deductions, explaining that they were interested only in the amount of the refund.

The government subsequently indicted Jennings on 23 counts of

___

[1]In the tax returns, the taxpayers signed the following statement: "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete." S.J.A. 148.

willfully aiding and assisting in the preparation and presentation of false and fraudulent returns in violation of 26 U.S.C. § 7206(2).[2] At trial, the government called the taxpayer witnesses, who, "[f]or the most part[ ]," testified consistently with their signed affidavits. S.J.A. 175. In addition to the taxpayer testimony, the district court also admitted the fraudulent returns into evidence. J.A. 29-30.

The jury returned a guilty verdict on 12 of the 23 counts of the indictment. J.A. 1034-35. The district court subsequently denied Jennings' motion to set aside the jury verdict and for a new trial, S.J.A. 173-78, and sentenced him to 27 months imprisonment, J.A. 1158-59. This appeal followed.

## II.

Jennings argues that the district court erred in refusing to grant him a new trial because the government's knowing use of perjured taxpayer testimony violated his right to due process, thereby depriving him of a fair trial. We disagree.

In denying Jennings' motion for a new trial, the district court held that "the taxpayer witnesses committed perjury either (1) when they signed their returns stating that they had examined the figures on the returns and that those figures were correct; or (2) when they signed the affidavits and testified in Court that they did not examine the deductions contained in the return." S.J.A. 176. Nevertheless, the district court concluded that even "the presentation of [such] inherently

---

[2]Section 7206(2) provides as follows:

> Any person who . . . willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document . . . shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

incredible . . . testimony" did not prejudice Jennings "by depriving him of a fair trial." S.J.A. 177. We express no view regarding whether the government knowingly used perjured testimony against Jennings *at the trial* because, even if we assume that it did, there is no "reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States* v. *White*, 238 F.3d 537, 540-41 (4th Cir. 2001) (quoting *Kyles* v. *Whitley*, 514 U.S. 419, 433 n.7 (1995)).

First, the weight of the evidence in this case, even aside from the taxpayers' testimony, pointed heavily toward Jennings' guilt. As the district court observed in reaching this conclusion, "a simple comparison of the amounts the taxpayers claimed to have paid in medical expenses and charitable contributions with the amount of income earned by the taxpayers reveals the grossly disproportionate amount of itemized deductions claimed on the returns." S.J.A. 177. Indeed, the jury could have readily found that the returns were "fraudulent" or "false" on their face since the total itemized deductions as a percentage of adjusted gross income on the 23 returns ranged from a low of 45% to a high of 99%, with 22 of the 23 returns containing total itemized deductions that were greater than 60% of adjusted gross income. S.J.A. 172. *See United States* v. *Conlin*, 551 F.2d 534, 536 (2d Cir. 1977) (holding that the jury's finding that a tax preparer acted willfully was supported "by both the frequency and similarity of" the overstated deductions in the returns that he prepared). Furthermore, as the district court noted, the jury could have inferred guilt, especially as to willfulness, from Jennings' repeated pattern of failing to obtain "sufficient documentation despite the obvious disproportion between the deductions and available income" on the returns. S.J.A. 177.

Second, even assuming *arguendo* that the government knowingly submitted perjured testimony, Jennings conceded at oral argument that he "ha[d] failed to demonstrate that [the taxpayers] lied about any material fact." *Knox* v. *Johnson*, 224 F.3d 470, 478 (5th Cir. 2000). Section 7206(2) expressly provides that a person may be convicted "whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim or document." Thus, even if the taxpayers' testimony at trial denying any knowledge of the claimed deductions was perjurious, such testimony was not material since "the innocence or guilty knowl-

edge of a taxpayer is *irrelevant* to [a section 7206 prosecution]." *United States* v. *Jackson*, 452 F.2d 144, 147 (7th Cir. 1971) (emphasis added); *see also United States* v. *Rowlee*, 899 F.2d 1275, 1279 (2d Cir. 1990) ("In fact, the guilt or innocence of the taxpayer for whom the return was filed is irrelevant to the question of the adviser's guilt."). As a result, any perjured testimony in this case was relevant only to the credibility of the taxpayer witnesses, not to establishing a section 7206(2) violation by Jennings.

Finally, to the extent Jennings contends that his due process rights were violated by not being afforded an opportunity to impeach the credibility of the taxpayer witnesses, we disagree, for it is *undisputed* that the government turned over to Jennings both the tax returns and the affidavits almost two months prior to trial. Indeed, having been made aware of the discrepancies in the various taxpayer statements, defense counsel actually highlighted some of the inconsistencies during his examination of the taxpayer witnesses at trial.

Accordingly, we hold that the district court did not abuse its discretion in denying Jennings' motion to set aside the verdict and for a new trial because even if the government knowingly presented perjured testimony, there is no "reasonable likelihood that the false testimony could have affected the judgment of the jury."[3]

## *CONCLUSION*

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*

---

[3]In a related claim, Jennings also argues that the district court erred when it failed to instruct the jury that it was entitled to completely disregard the taxpayer testimony because the taxpayer witnesses committed perjury either in their returns or in their affidavits. J.A. 1009. Even assuming *arguendo* that the taxpayer testimony was, in fact, perjurious, the district court did not abuse its discretion in refusing Jennings' proffered instruction because the court appropriately administered a "broad range of instructions on credibility." *United States* v. *Gray*, 137 F.3d 765, 773-74 (4th Cir. 1998).