**UNITED STATES of America,**

v.

**Kimberly HOLLIER, Defendant.**

**No. 03 CRIM. 144VM.**

United States District Court,
S.D. New York.

April 19, 2004.

Marcia Cohen, Assistant United States Attorney, Mary Jo White, United States Attorney, Criminal Division, New York, NY, for U.S.

Earl L. Scott, New York, NY, for Kimberly Hollier.

### DECISION AND ORDER

MARRERO, District Judge.

A jury convicted the defendant in this action of three counts tax evasion, and he now moves the Court to set aside the verdict and enter a judgment of acquittal. The Court finds that the evidence supporting the conviction was more than sufficient and that were no legal errors to justify entering a judgment of acquittal. The motion is denied.

### I. BACKGROUND

A grand jury indicted defendant Kimberly Hollier ("Hollier") on three counts of tax evasion, in violation of 26 U.S.C. 7201, one count for each of the years 1996, 1997, and 1998. The indictment charges that Hollier earned wages as a carpenter for the New York City Housing Authority ("NYCHA"), but that he attempted to avoid paying taxes on those wages by, among other means, not filing proper income tax returns and by filing fraudulent Internal Revenue Service ("IRS") documents.

In two days of trial testimony, the Government presented substantial and compelling evidence against Hollier. The evidence showed that Hollier fraudulently sought to be considered "exempt" from having NYCHA withhold a portion of his wages. Under applicable IRS regulations, an individual is exempt from withholding only if he had no tax liability in the previous year and expects to have no tax liability for the current year. In each of the relevant years, Hollier declared on IRS Form W–4 that he was exempt from withholding, even though he was earning a substantial amount of taxable income – almost $60,000 in 1997. Based on those false W–4s, Hollier was initially considered "exempt" and presumably received full paychecks, without federal tax withholdings. The IRS noticed the obvious discrepancy and sent letters to NYCHA directing it to begin withholding federal taxes from Hollier's paycheck. The IRS also sent letters notifying Hollier of the change in his withholding status.

NYCHA then received a series of letters, purportedly from the IRS, directing NYCHA to ignore the IRS's previous letters and to consider Hollier exempt. The evidence overwhelmingly suggested that those letters were fake. The Government introduced evidence of what actual IRS letters – computer-generated form letters – would look like. The wording on the fake letters did not match the IRS's form letters, and the fake letters contained the wrong identification code. In fact, the identification code on the fake letters corresponded to the type of form letter which the IRS sends to notify employees (not employers) of a change in withholding status. As stated, Hollier had received such a letter.

Even beyond the common sense observation that only Hollier stood to benefit from the fake letters, the evidence overwhelmingly suggested that Hollier created the fraudulent documents. One letter was faxed to NYCHA along with a cover sheet containing Hollier's phone number and stating that it was from "Kimberly Hollier." Another letter arrived at NYCHA in an IRS envelope with a postal sorting stamp and bar code for zip code "11218." A NYCHA employee testified that NYCHA is located in zip code 10007 and that all of its mail typically includes the sorting stamp and bar code for "10007." Hollier lived in Brooklyn in zip code 11218, suggesting that he had "recycled" an envelope he had received from the IRS to make his fake IRS letters appear authentic.

IRS Agent Robert Doran testified that he interviewed Hollier in July 1998 and told Hollier that he was under criminal investigation for tax evasion. In August 1998, Hollier filed, for the first time, his 1996 tax return. In that return, Hollier states that he had zero taxable income for the year 1996, and he sought a refund of all the funds which the Government had withheld. In October 2000, Hollier filed, also for the first time, his 1997 and 1998 tax returns. Each continued the same pattern as 1996: Hollier claimed to have no taxable income and sought a refund of all withheld taxes.

Hollier did not testify nor did he present any witnesses in his defense. The Court instructed the jury that, for each count, it could enter a guilty verdict only if the Government proved each of the following three elements of tax evasion beyond a reasonable doubt: (1) that Hollier owed taxes for the relevant year; (2) that Hollier committed an affirmative act attempting to evade, or evading those taxes owed; and (3) that Hollier acted wilfully. *See* Tr. at 275–76; *see also Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965) (listing elements of tax evasion). After about two hours of delib-

erations, the jury reached a guilty verdict on all three counts.

## II. *STANDARD OF REVIEW*

Where a jury has returned a guilty verdict, Federal Rule of Criminal Procedure 29 permits a court to set aside the verdict and enter an acquittal "of any offense for which the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). However, the Court must deny the motion if the Court concludes that, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).

## III. *DISCUSSION*

■ Hollier first argues that no rational juror could have convicted him because he fully disclosed to the IRS all the information necessary to compute his proper tax liability. Hollier points out that he submitted authentic IRS Forms W–2 with each of his 1996, 1997, and 1998 tax returns, and that those forms clearly showed his earnings. Because Hollier fully volunteered this information to the IRS, the argument goes, he could not have intended to hide anything from the IRS.

The Court is unpersuaded. Hollier filed those tax returns years *after* they were due and *after* he had already committed independent acts of tax evasion which would suffice to uphold the conviction – *e.g.,* submitting fraudulent W–4s to NY-CHA and creating fake IRS correspondence. Moreover, Hollier's tax returns falsely stated that Hollier had zero taxable income, and actually sought a refund from the Government for *all* taxes withheld. Hollier sought that refund even after knowing he was under criminal investigation for tax evasion. The fact that Hollier also included his W–2s (which the IRS no

doubt could obtain from NYCHA, in any case) in his submissions to the IRS does not in any way suggest that Hollier was not committing tax evasion. Rather, it indicates that Hollier's attempts to avoid his tax obligations were especially brazen.

■ Hollier next argues that he was denied his right to a summation. At several points during closing remarks, Hollier's attorney attempted to argue that Hollier actually believed that the Government did not have the right or authority to impose taxes on him. This line of argument was apparently intended to show that Hollier's actions were not willful. The Court sustained the Government's objections because there was absolutely no evidence on the record regarding Hollier's beliefs in this respect. The Court issued a short, written decision explaining its reasoning on this point. *See United States v. Hollier*, 306 F.Supp.2d 345 (S.D.N.Y.2004). Hollier re-argues that same point, but now suggests that there exists evidence bearing upon Hollier's willfulness. Specifically, Hollier states that he submitted letters with each of his tax returns challenging the Government's right to impose taxes on him. Hollier suggests that those letters should have been included in the exhibits of Hollier's tax returns because the letters were part of the tax returns.

Hollier failed to object to those exhibits as incomplete when they were offered into evidence, and hence the underlying issue is unpreserved. *See* Fed.R.Crim.P. 51(b) ("A party may preserve a claim of error by informing the court – *when the court ruling or order is made or sought* – of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection.") (emphasis added). Hollier does not explain how the Court could have cured this alleged error *during summation* because both sides had already rested and the let-

ters were never admitted into evidence. The Court certainly could not have permitted Hollier to make closing arguments based upon documents which might have been, but were not, in evidence. More fundamentally, Hollier does not explain how this alleged denial of summation would justify a judgment of acquittal.

Hollier suggests that he could have introduced the missing letters into evidence only had he testified, which, of course, he has a Fifth Amendment right to avoid. To the extent that Hollier suggests that this issue involves a violation of the Fifth Amendment, Hollier's point is unpersuasive. A defendant availing himself of the benefits of the Fifth Amendment's right not to testify also bears the obvious consequence that the jury will not hear his side of the story. *See United States v. Folami*, 236 F.3d 860, 863 (7th Cir.2001) ("Defendants, of course, have a Fifth Amendment right not to testify in their cases, but they must live with the consequences of their decisions."). In any event, Hollier could have presented the letters at issue by calling an IRS witness, or, more simply, by timely objecting to the Government's exhibits as incomplete under Federal Rule of Evidence 106. *See* Fed.R.Evid. 106 ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.").[1]

Hollier next argues that this prosecution violates Hollier's First Amendment right to protest the tax system. The Second Circuit has squarely rejected this argument. *See United States v. Rowlee*, 899 F.2d 1275, 1279 (2d Cir.1990) ("The con-

sensus of this and every other circuit is that liability for a false or fraudulent tax return cannot be avoided by evoking the First Amendment.").

■ Hollier next contends that the Court erred in excluding evidence from two proposed witnesses who would have testified to Hollier's good character. The Court stands by its initial oral ruling that those witnesses were properly precluded from testifying. Under Federal Rule of Evidence 404(a)(1), this type of character evidence – which is generally not admissible – is admissible when it pertains to a "pertinent trait" of a criminal defendant. Fed.R.Evid. 404(a)(1). The Second Circuit has described this exception as one "based on notions of fairness rather than logic." *United States v. Pujana–Mena*, 949 F.2d 24, 30 (2d Cir.1991). Accordingly, the Second Circuit has also stated that the Rule "applies a lower threshold of relevancy to character evidence than that applicable to other evidence." *United States v. Han*, 230 F.3d 560, 564 (2d Cir.2000).

The proffered evidence failed to meet even this low threshold of relevancy. The proposed witnesses did not know Hollier until a time long past the events alleged in the indictment. Moreover, the defense proposed that they would testify as to Hollier's good character in general, which has nothing do with his character traits in his capacity as a taxpayer. The text of the Rule itself is limited to *"pertinent"* character traits, and the Second Circuit has stated that the proffered evidence must "relate to some element at issue in the case." *Id.* (emphasis added). In any event, this alleged error would not justify a judgment of acquittal.

---

1. Hollier makes a separate, but related, argument that, through these letters, the Government received adequate notice that Hollier did not believe he owed taxes. The Court does not understand, nor does Hollier explain, how the Government's "notice" is relevant to negating any of the elements of the offense.

■ Finally, Hollier argues that the Court erred in permitting an IRS revenue agent to testify that Hollier paid taxes in the years 1987 through 1989, thereby implying that he had not paid taxes since then, including years not included in the indictment. Apart from the fact that Hollier did not object to this testimony, the Court concludes that it was properly presented. Under Federal Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R.Evid. 404(b). The revenue agent's testimony, however, was relevant for a different purpose: to show that Hollier acted willfully when he failed to pay his federal taxes in the relevant years. Rule 404(b) provides for admission of evidence for just such limited "non-propensity" related purposes, including "intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Where evidence is offered for a non-propensity related purpose, it is admissible as long as the evidence is also relevant under Rules 401 and 402, and is more probative than unfairly prejudicial under Rule 403. *See United States v. Mickens*, 926 F.2d 1323, 1329 (2d Cir. 1991). The IRS agent's testimony meets those standards.

First, evidence of Hollier's failure to pay taxes not pertaining to the tax evasion charges in the indictment is relevant under Rules 401 and 402 because it makes "more probable" than otherwise the existence of the "willfulness" element of the offense. *See* Fed.R.Evid. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Fed.R.Evid. 402 (stating that relevant evidence is generally admissible). The Second Circuit has held that "a defendant's past taxpaying record is admissible to prove willfulness circumstantially" because such evidence is "indicative of an intent to evade the tax system." *United States v. Bok*, 156 F.3d 157, 165–66 (2d Cir.1998); *see also United States v. Ebner*, 782 F.2d 1120, 1126 n. 7 (2d Cir.1986) ("The jury may consider evidence of intent to evade taxes in one year as evidence of intent to evade payment in prior or subsequent years.").

Second, the evidence here at issue is not such that its "probative value is substantially outweighed by the danger of unfair prejudice" under Rule 403. Fed.R.Evid. 403. Evidence is unfairly prejudicial if it "tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir.1980). "The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *Id.*

The IRS agent's brief testimony did not involve any fact which would excite the jurors' emotions. As explained above, the Second Circuit has recognized the probative value of precisely this type of evidence. The Court notes, moreover, that because "proof of willfulness usually must be accomplished by means of circumstantial evidence[,] . . . trial courts should follow a liberal policy in admitting evidence directed towards establishing the defendant's state of mind." *United States v. Collorafi*, 876 F.2d 303, 305 (2d Cir.1989). The Court, on several occasions, issued limiting instructions to the jury on precisely this point, further reducing any risk of unfair prejudice. As with Hollier's other evidentiary complaints, the Court is unpersuaded that the alleged error would justify a judgment of acquittal.

## IV. *ORDER*

For the reasons stated, it is hereby

**ORDERED** that the motion of Kimberly Hollier for entry of a judgment of acquittal is denied.

**SO ORDERED.**