UNITED STATES of America, Plaintiff,

v.

**Robert J. RIGGS, also known as Robert Johnson, also known as Prophet, and Craig Neidorf, also known as Knight Lightning, Defendants.**

**No. 90 CR 0070.**

United States District Court,
N.D. Illinois, E.D.

July 23, 1990.

Ira H. Raphaelson, U.S. Atty. by William J. Cook, Colleen D. Coughlin, David Glockner, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Sheldon T. Zenner, Ted S. Helwig, Kenneth M. Kliebard, Katten Muchin & Zavis, Chicago, Ill., for defendant Neidorf.

Eric M. Lieberman, Terry Gross, Nicholas E. Poser, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, for amicus curiae Electronic Frontier Foundation.

## MEMORANDUM ORDER

BUA, District Judge.

On June 5, 1990, this court entered a memorandum opinion denying defendant Craig Neidorf's motion to dismiss the original indictment in this case. *See United States v. Riggs,* 739 F.Supp. 414 (N.D.Ill. 1990). Two days later, the Special April 1990 Grand Jury returned an 11–count superseding indictment against Neidorf and his co-defendant, Robert Riggs. Neidorf now moves to dismiss each count in the superseding indictment except Count I, which names only Riggs as a defendant. In support of his motion, Neidorf adopts the arguments in the amicus curiae briefs of Electronic Frontier Foundation ("EFF").[1] For the reasons stated herein, EFF's arguments are rejected; Neidorf's

---

1. Neidorf also reasserts the arguments he made in challenging the original indictment. Nothing in the superseding indictment, however, gives the court reason to revisit the issues already resolved by the court's June 5 order. Accordingly, to the extent that Neidorf applies his previous arguments to the superseding indictment, those arguments are summarily rejected.

motion to dismiss the superseding indictment is accordingly denied.

## FACTS

The facts set forth in the superseding indictment are essentially the same as those in the original indictment, so only a brief overview of them is necessary here. The government charges that Neidorf and Riggs devised and implemented a scheme to defraud involving the use of computers. The original indictment charged that the focus of the fraud scheme was narrow; the government claimed that the goal of the scheme was to use computers to steal the E911 text file owned by Bell South Telephone Company ("Bell South").[2] The superseding indictment, however, now charges that misappropriation of Bell South's E911 text file was only *one* of the goals of the fraud scheme in which Neidorf and Riggs participated. The objective of the scheme is now more generally described as follows:

> [T]o fraudulently obtain and steal private property in the form of computerized files by gaining unauthorized access to other individuals' and corporations' computers, copying the sensitive computerized files in those computers, and then publishing the information from the computerized files in a hacker publication for dissemination to other computer hackers.

Thus, government now claims that Riggs and Neidorf entered into a scheme to steal and disseminate not only Bell South's E911 file, but other valuable computer-stored information as well.

According to the superseding indictment, Riggs and Neidorf committed several acts in furtherance of their broad scheme to distribute information stolen from computer systems. Each of these acts forms the basis for separate charges in Counts Two, Three, Four and Seven of the superseding indictment. Count Two charges that Neidorf violated the federal wire fraud statute, 18 U.S.C. § 1343, by using his computer to announce the beginning of the "Phoe-

nix Project." According to the government, that project involved a plan to solidify the hacker community by publishing hacking tutorials and disseminating other items of interest to hackers, such as information on how to prevent law enforcement authorities from discovering hacking activity. Neidorf's plan was to use a computer hacker newsletter entitled "PHRACK," which he published regularly, to distribute information to the hacking community. Counts Three and Four charge that Neidorf and Riggs further violated § 1343 by sending communications to each other via electronic mail concerning the implementation of their scheme. In addition, Count Seven charges that Neidorf violated § 1343 by publishing an issue of PHRACK which contained a series of tutorials about breaking into computer systems.

The superseding indictment also charges Neidorf and Riggs with committing acts in furtherance of their more specific goal to fraudulently obtain Bell South's E911 text file. These acts form the basis of the remaining counts in the superseding indictment—Counts One, Five, Six, Eight, Nine, Ten, and Eleven. Count One charges that Riggs violated § 1343 by gaining unauthorized access to Bell South's computer system in Atlanta, Georgia, downloading a copy of Bell South's E911 text file to his home computer in Decatur, Georgia, and then transferring the E911 file to a computer bulletin board service in Lockport, Illinois, where he stored it for Neidorf's review. Count Five charges that Neidorf and Riggs violated § 1343 when Neidorf, using a computer located at the University of Missouri in Columbia, Missouri, retrieved the E911 file from the Lockport computer bulletin board. Count Six charges that Neidorf's receipt of the E911 file from Riggs through the Lockport computer bulletin board constitutes a violation of the federal statute prohibiting the interstate transportation of stolen property, 18 U.S.C. § 2314.

---

**2.** The E911 computer text file contains confidential, valuable, proprietary information describing the computerized control and mainte-

nance of the emergency 911 services in the nine-state region in which Bell South operates.

After receiving the E911 file, Neidorf allegedly edited the file to conceal the fact that it had been fraudulently obtained by Riggs. Counts Eight and Nine charge that Riggs and Neidorf violated § 1343 and § 2314 when Neidorf transferred the edited version of the E911 file back to Riggs through the Lockport bulletin board. A short time later, Neidorf used his computer to publish the edited version of the E911 text file in an issue of PHRACK. Count Ten charges that Neidorf violated § 1343 by publishing the E911 text file in PHRACK, and Count Eleven charges that the publication of the E911 file in PHRACK constituted a violation of § 2314 by both Neidorf and Riggs.

## DISCUSSION

Neidorf's arguments, as presented by amicus EFF, attack the superseding indictment in two waves. One set of arguments challenges the counts against Neidorf based on the transfer of the stolen E911 file—Counts Five, Six, Eight, Nine, Ten and Eleven. The other set of arguments challenges the counts dealing with the remaining charges—Counts Two, Three, Four, and Seven. The court will address each set of Neidorf's arguments separately.

### I. *Counts Five, Six, Eight, Nine, Ten and Eleven*

#### A. First Amendment

■ Neidorf's main challenge to Counts Five, Six, Eight, Nine, Ten and Eleven of the superseding indictment is grounded in the First Amendment. He argues that criminalizing his publication of the E911 text file in PHRACK—as the government attempts to do in Counts Ten and Eleven— constitutes an unconstitutional abridgement of his First Amendment rights. He further contends that since Counts Five, Six, Eight and Nine are based on the transfer of information which was incidental to the publication of the E911 file in

PHRACK, finding him criminally liable under those counts would also abridge his First Amendment freedoms.

In support of his argument, Neidorf relies principally on three cases: *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979); *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978); and *Worrell Newspapers of Indiana, Inc. v. Westhafer,* 739 F.2d 1219, 1222 (7th Cir.1984), *aff'd,* 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985). Neidorf maintains that under this precedent, a statute which criminalizes the publication of information can be sustained against a First Amendment attack only if it serves "the highest form of governmental interest." The *Smith, Landmark,* and *Worrell* decisions, however, are clearly distinguishable from the instant case. Each of those cases involved a statute expressly aimed at placing a prior restraint on speech. In addition, each of those cases involved the criminal prosecution of an individual for publishing information which had been *lawfully* obtained. In the instant case, in contrast, the superseding indictment does not charge Neidorf under a statute creating an express prior restraint on speech and, more importantly, the superseding indictment does not allege that Neidorf lawfully obtained Bell South's E911 file. In fact, the superseding indictment specifically charges that Riggs and Neidorf entered into a scheme to steal and disseminate confidential, computer-stored information, including Bell South's E911 text file. Thus, according to the superseding indictment, even though Neidorf did not actually steal the E911 file, he was completely aware that it was stolen when he received it from Riggs.[3] As such, Neidorf clearly stands on different footing than the defendants in *Smith, Landmark,* and *Worrell.*

■ Moreover, the law is clear that where an individual violates an otherwise valid criminal statute, the First Amendment does not act as a shield to preclude

---

**3.** The First Amendment argument in EFF's amicus brief is based largely on its assertion that Neidorf "did not participate in or know of the theft [of the E911 file] in advance." While Nei-

dorf is certainly free to try to prove the truth of that assertion at trial, that statement is directly contradictory to the charges in the superseding indictment.

the prosecution of that individual simply because his criminal conduct involves speech. For example, in *United States v. Rowlee*, 899 F.2d 1275 (2d Cir.1990), defendant Rowlee formed a society whose activities dealt almost exclusively with promoting the evasion of taxes and frustrating the work of the Internal Revenue Service. Rowlee conducted seminars in which he counseled individuals to violate federal tax laws; he also advertised his anti-tax theories and services in the newspapers. The Second Circuit rejected Rowlee's argument that his First Amendment rights were abridged by his conviction for mail fraud and for violations of 18 U.S.C. § 371 (conspiracy to defraud the United States) and 26 U.S.C. § 7206(2) (aiding and abetting tax fraud). With respect to the § 371 charge, the court held:

> "[S]peech is not protected by the First Amendment when it is the very vehicle of the crime itself["] ... [Rowlee was] convicted of the act of conspiracy, an act forbidden by section 371. [His] conduct was not protected by the First Amendment merely because, in part, it may have involved the use of language.

*Id.* at 1278 (quoting *United States v. Varani*, 435 F.2d 758, 762 (6th Cir.1970)). In addressing the mail fraud charge, the court found that the First Amendment was simply not implicated. The court stated, "The defendants either violated the mail fraud statute or they did not. If they did not, reference to the First Amendment [in the jury instructions] only introduced an unnecessary complication into the case." *Id.* at 1280.

Similarly, in *United States v. Morison*, 844 F.2d 1057 (4th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 247 (1988), where a military intelligence employee was charged with violating the Espionage Act by sending an unauthorized transmission of national security material to a member of the press, the court held that First Amendment was not implicated. The court noted that the government based the charges on allegations that the defendant knowingly and willfully stole and distributed the secret documents. The court then stated, "We do not think that the First Amendment offers asylum under those circumstances, if proven, merely because the transmittal was to a representative of the press." *Id.* at 1068. Other courts have rejected First Amendment arguments similar to those in *Rowlee* and *Morison. See, e.g., United States v. Lincoln*, 589 F.2d 379, 382 (8th Cir.1979) (rejecting defendant's First Amendment attack against his conviction for mailing a threatening letter in violation of 18 U.S.C. § 876); *United States v. Bodin*, 375 F.Supp. 1265, 1267 (W.D.Okla.1974) (rejecting defendant's argument that federal statutes proscribing copyright infringement violate the First Amendment).

Neidorf argues that the E911 text file he published "is plainly of interest to any member of the public concerned with the operation of the system through which he can reach 'police, fire, and/or ambulance services.'" Even if that were true, however, under *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), Neidorf's violation of criminal law is not excused simply because he provided the public with interesting information. In *Branzburg*, a reporter had written a newspaper article concerning certain criminal activities of individuals whom he had promised not to identify. When a grand jury subpoenaed the reporter to gather information concerning the criminal activity described in his article, the reporter argued that the First Amendment protected him from divulging the information. The Supreme Court rejected the reporter's argument. The Court held:

> It would be frivolous to assert—and no one does in these cases—that the First Amendment, in the interest of securing news or otherwise, confers a license on either the reporter or his news sources to violate valid criminal laws. Although stealing documents or wiretapping could provide newsworthy information, neither reporter nor source is immune from conviction for such conduct, whatever the impact on the flow of news.

*Id.* at 691, 92 S.Ct. at 2662.

In short, the court finds no support for Neidorf's argument that the criminal activi-

ty with which he is charged in this case is protected by the First Amendment. Interpreting the First Amendment as shielding Neidorf from criminal liability would open a gaping hole in criminal law; individuals could violate criminal laws with impunity simply by engaging in criminal activities which involve speech-related activity. The First Amendment does not countenance that kind of end run around criminal law.

## B. Vagueness

Under *Palmer v. City of Euclid,* 402 U.S. 544, 91 S.Ct. 1563, 29 L.Ed.2d 98 (1971), a criminal charge must be dismissed where a criminal statute, as applied to the defendant's conduct, "fail[s] to give 'a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.'" *Id.* at 545, 91 S.Ct. at 1564 (quoting *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811–12, 98 L.Ed. 989 (1954)). Neidorf argues that Counts Five, Six, Eight, Nine, Ten and Eleven should be dismissed pursuant to *Palmer* because sections 1343 and 2314 are unconstitutionally vague as applied to his alleged conduct.

■ The court finds no merit in Neidorf's contention. Two elements must be proven to sustain a conviction under the wire fraud statute: (1) a scheme to defraud; and (2) use of wire communications in furtherance of the scheme. *Lombardo v. United States,* 865 F.2d 155, 157 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3186, 105 L.Ed.2d 695 (1989). It is not in any way unclear or ambiguous that Neidorf's alleged conduct satisfies each of these elements. According to the superseding indictment, Neidorf entered into a scheme to defraud Bell South and other corporations and individuals out of valuable, computer-stored information, and through the use of a computer he allegedly caused wire communications to be sent in furtherance of that scheme. If these allegations are true, then Neidorf schemed, and he used wire communications to fur-

ther his scheme. Thus, there are no vagueness problems with respect to § 1343; that statute clearly applies to Neidorf's alleged conduct.[4]

■ With respect to § 2314, Neidorf's vagueness argument is a by-product of his previous argument against the original indictment that he did not cause "goods, wares, or merchandise" to be transferred within the meaning of the statute. The court rejected that argument, finding that the confidential, computer-stored information which Neidorf allegedly transferred comes within the § 2314 definition of "goods, wares, or merchandise." Neidorf now argues that § 2314 is unconstitutionally vague as applied to him because he could not have known that the information he transferred came within the definition of "goods, wares, or merchandise."

However, as this court detailed in the earlier opinion in this case, several courts have already held that the definition of "goods, wares, or merchandise" in § 2314 encompasses proprietary business information which is stored on a tangible medium, such as paper. *See United States v. Riggs,* 739 F.Supp. 414, 420 (N.D.Ill.1990) (collecting cases). The only difference between those cases and this case is that here the information was stored on computer. Moreover, it is clear that in this case Neidorf knew the information he transferred was valuable property; in fact, that is the precise reason he wanted to obtain the information and share it with other computer hackers. Therefore, the court finds that § 2314, as applied to this case, is not unconstitutionally vague. Neidorf had fair notice that his alleged conduct could constitute a violation of that statute.

## II. Counts Two, Three, Four and Seven

### A. Scheme to Defraud

■ Neidorf argues that Counts Two, Three, Four and Seven—all of which

4. The court notes that as with its First Amendment argument, EFF's vagueness argument is based largely on the notion that Neidorf was an innocent recipient of the stolen E911 file. As the court has already pointed out, that notion is contradicted by the express allegations in the superseding indictment. Those allegations charge that when Neidorf received the E911 file, he was completely aware of the fact that it had been stolen.

charge wire fraud—should be dismissed on the grounds that the superseding indictment "fails to allege a scheme to defraud of which these counts could be a part." This argument is easily rejected. As noted above, the superseding indictment expressly alleges that Neidorf and Riggs entered into a scheme to defraud individuals and corporations out of proprietary information stored on computers. This plan involved two major steps: (1) stealing the information by gaining unauthorized access to computers; and (2) disseminating the information to others. Any use of the wires in furtherance of the alleged scheme is chargeable under the wire fraud statute. To satisfy the "in furtherance" requirement, a wire communication must simply be "incident to an essential part of the scheme." *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 1447, 103 L.Ed.2d 734 (1989) (quoting *Badders v. United States,* 240 U.S. 391, 394, 36 S.Ct. 367, 368, 60 L.Ed. 706 (1916)).[5]

Each wire communication alleged in Counts Two, Three, Four and Seven clearly satisfies that requirement. Counts Three and Four charge that Neidorf and Riggs exchanged electronic mail discussing the implementation of the scheme. Counts Two and Seven involve wire transfers of separate issues of PHRACK. In one of those issues (Count Two), Neidorf announced the beginning of the "Phoenix Project;" in the other (Count Seven), he published tutorials on computer hacking. Each of these communications was certainly incident to an essential part of the scheme, since the aim of the communications was ostensibly to encourage others to illicitly obtain confidential, computer-stored information. Therefore, based on the scheme alleged in the superseding indictment, the acts in Counts Two, Three, Four, and Seven are properly chargeable under the wire fraud statute.

### B. First Amendment

Relying again on the First Amendment, Neidorf raises a separate challenge to Counts Two and Seven, which he claims charge him with mere advocacy of illegal conduct. He argues that under *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), his mere advocacy of illegal activity is no basis for criminal liability because: (1) the alleged advocacy was not directed at producing imminent lawless action; and (2) the alleged advocacy was not likely to produce or incite such action.

Neidorf's argument must be rejected for the same reasons the court rejected Neidorf's previous First Amendment argument. If Neidorf participated in the scheme to defraud as alleged in the superseding indictment, then he is criminally responsible for his conduct in furtherance of the scheme, and the First Amendment does not shield him from that responsibility merely because his criminal conduct involved speech. *See, e.g., Rowlee,* 899 F.2d at 1278–81; *Morison,* 844 F.2d 1068. Cases like this one, where a wire fraud violation is based on the theft and unlawful dissemination of proprietary business information, simply do not implicate the type of First Amendment concerns which arise in cases like *Brandenburg,* which involved prosecution under a criminal syndicalism statute. Moreover, as the court noted in *Rowlee,* the *Brandenburg* test cannot be reasonably applied to violations of the mail fraud or wire fraud statutes, which usually "involve long-term, slowly-developing wrongs, not 'imminent lawless action.'" *Rowlee,* 899 F.2d at 1280. Therefore, Neidorf's request to dismiss Counts Two, Three, Four and Seven on First Amendment grounds must be denied.

### CONCLUSION

For the foregoing reasons, Neidorf's motion to dismiss the superseding indictment is denied.

IT IS SO ORDERED.

---

**5.** *Schmuck* involved the mail fraud statute, but the Seventh Circuit has consistently held that cases construing the mail fraud statute are ap-plicable to the wire fraud statute. *See United States v. Gimbel,* 830 F.2d 621, 627 (7th Cir. 1987).