**UNITED STATES of America**

v.

**Francis John KUFROVICH.**

**No. 3:97–CR–127 (EBB).**

United States District Court,
D. Connecticut.

Dec. 11, 1997.

E. Gates Garrity–Roukous, Assistant United States Attorney, New Haven, CT, for plaintiff.

William F. Dow, III, Jacobs, Grudberg, Belt & Dow, New Haven, CT, Richard Alan Anderson, Thomas G. Pappas, Burleson, Pate & Gibson, Dallas, TX, for defendant.

### *RULING ON DEFENDANT'S PRE–TRIAL MOTIONS*

ELLEN B. BURNS, Senior District Judge.

The defendant, Francis Kufrovich, was indicted by a Grand Jury, charged in two counts with using a means of interstate commerce, knowingly to persuade a person under 18 years of age to engage in a sexual act for which any person may be criminally prosecuted [1] and with traveling in interstate com-

---

1. In full, the first count of the indictment charges that:

From on or about February 8, 1996, to an or about March 12, 1996, in the District of Connecticut and elsewhere, the defendant, Francis John Kufrovich, used a facility or means of interstate commerce, including the telephone wires, Internet, and United States Mail, knowingly to persuade, induce, entice, and coerce, and knowingly to attempt to persuade, induce, entice, and coerce, a person under 18 years of age, to engage in a sexual act for which any person may be criminally prosecuted under federal, state or local law.

All in violation of Title 18, United States Code, section 2422(b).

Section 2422(b) provides as follows:

Whoever, using any facility or means of interstate or foreign commerce, including the mail, or within the special maritime and territorial jurisdiction of the United States, knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years to engage in prostitution or any sexual act for which any person may be criminally prosecuted, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

merce for the purpose of engaging in a sexual act as defined in 18 U.S.C. § 2246 with a person under 18 years of age.[2] Mr. Kufrovich moves the Court to suppress evidence, for a change of venue, to sever the counts, to dismiss one or both counts on various grounds, for disclosure of Grand Jury instructions, to prevent the government from mentioning any extrinsic offenses or other acts of misconduct, and for a Bill of Particulars. For the following reasons, the defendant's pre-trial motions (Doc. Nos.23, 25–27, 29–31, 33, 35, 36) are denied.

## I. Discussion

### A. Extrinsic Offenses or Other Acts of Misconduct

█ The defendant moves the Court to prohibit the Government from mentioning during the trial any extrinsic offenses or other acts of misconduct without first obtaining a ruling from the Court on its admissibility outside the presence of the jury. The defendant argues that the mention of such evidence, which he suggests is likely to be inadmissible under FED.R.EVID. 404(b), would unduly prejudice him. (Def.'s Mot. to Prohibit the Mention of Extrinsic Offenses at 1 .)

Rule 404(b) prohibits the introduction of evidence of past acts simply for the purpose of showing that the defendant has a propensity toward such behavior. However, the rule expressly states that prior act evidence may be admitted for other purposes, when relevant, to demonstrate, *inter alia*, motive, intent, or knowledge. Moreover, the Second Circuit follows an "inclusory" approach to FED.R.EVID. 404(b) which deems evidence of other acts admissible " 'for any purpose other

than to show a defendant's criminal propensity.' " *United States v. Pitre*, 960 F.2d 1112, 1118 (2d Cir.1992) (quoting *United States v. Roldan–Zapata*, 916 F.2d 795, 804 (2d Cir. 1990), *cert. denied*, 499 U.S. 940, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991)).

Given the broad approach to admissibility of "other act" evidence followed in this circuit, the Court can not agree with the defendant's assertion that such evidence is unlikely to be admissible. Indeed, in a case such as the present one, for which intent is a material issue, some "other act" evidence may be relevant to the determination of intent. If so, the Court will perform the balancing test required by FED.R.EVID. 403 to ensure that the probative value of the evidence is not outweighed by its potential for prejudice to the defendant.

However, the possibility of prejudice does not necessitate that the Court agree to hold a bench conference each time the government wishes to introduce "other act" evidence. The more proper course is for the defendant to file a motion *in limine* with the Court on specific evidence that he believes is unfairly prejudicial. The government has given the defendant notice through pre-trial discovery of the specific sexual relationships with minors, other than the alleged victim in this case, that it plans to introduce at trial. (Government's Omnibus Resp. to Def.'s Pre–trial Mot. at 19.) Therefore, nothing prevents the defendant from informing the Court via a motion *in limine* of exactly what "other act" evidence he finds objectionable. As to any "other act" evidence the government presents at trial that the defendant believes was not covered by a motion *in limine*, the Court

---

**2.** Count two of the indictment charges that:

On or about March 12, 1996, in the District of Connecticut and elsewhere, the defendant, Francis John Kufrovich, knowingly traveled in interstate commerce, for the purpose of engaging in a sexual act, as defined in Title 18, United States Code, Section 2246, with a person under 18 years of age that would be a violation of Chapter 109A of Title 18, United States Code, if the sexual act occurred in the special maritime and territorial jurisdiction of the United States.

All in violation of Title 18, United States Code, section 2423(b).

Section 2423(b) provides the following:
(b) Travel with intent to engage in a sexual act with a juvenile.—A person who travels in interstate commerce, or conspires to do so, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, or conspires to do so, for the purpose of engaging in any sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of Chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States shall be fined under this title, imprisoned not more than 10 years, or both.

can hear argument outside the presence of the jury during a recess.

For the reasons presented above, the defendant's motion (Doc. No. 23) is denied.

## B. Grand Jury Instructions

The defendant moves the Court to order the government to disclose the grand jury instructions used in this case. The defendant asserts that it is unclear whether the grand jury was ever instructed on the specific federal, state, or local law which serves as the basis for criminal liability or whether it was instructed that the defendant must have known that the alleged victim was a minor in order to be liable. (Def.'s Mot. to Obtain Grand Jury Instructions at 2.)

Although proceedings before a grand jury are subject to a general rule of secrecy, FED.R.CRIM.P. 6(e)(2), a court may order disclosure of grand jury instructions in connection with a judicial proceeding or when the defendant makes a showing that some occurrence before the grand jury may provide grounds to dismiss the indictment. FED. R.CRIM.P. 6(e)(3)(C).

■ A district court possesses substantial discretion in making the determination whether to order disclosure of grand jury proceedings. *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 223, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156 (1979). However, grand jury proceedings are entitled to a presumption of regularity. *United States v. Torres*, 901 F.2d 205, 232 (2d Cir. 1990), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). Rarely do courts order disclosure of grand jury minutes without specific factual allegations of government misconduct. *Id.* at 233. A court will not even inspect a grand jury record in camera without a showing by the defendant of a "particularized need." *United States v. Abrams*, 539 F.Supp. 378, 389 (S.D.N.Y. 1982).

■ In the present case, the defendant fails to allege government misconduct or to demonstrate with the requisite specificity the manner in which the grand jury instructions inadequately informed the grand jury of the elements of the charges. The defendant simply says that it is "extremely likely" that the grand jury was not instructed on which federal, state, or local law the government was relying since the indictment does not identify a particular law. (Def.'s Mot. to Obtain Grand Jury Instructions at 2.) This speculative assertion does not rise to the level required to overcome the presumption of regularity in grand jury proceedings, including the presumption that the government properly instructed the grand jury on the elements of the charged offenses.

■ The defendant also argues that there is no indication that the grand jury was properly instructed on the requirement that the defendant have knowledge that the alleged victim was a minor. As discussed below, however, both counts of the indictment incorporate a knowledge requirement as to the minority status of the alleged victim. There is, therefore, no reason to assume that the grand jury was not properly instructed as to this element. When a properly convened grand jury returns an indictment which is valid on its face, the indictment supports proceeding to a trial on the merits. *United States v. Morgan*, 845 F.Supp. 934, 941 (D.Conn.1994), *aff'd*, 51 F.3d 1105 (2d Cir.1995), *cert. denied*, 516 U.S. 861, 116 S.Ct. 171, 133 L.Ed.2d 112 (1995).

Because the defendant fails to overcome the presumption in favor of the secrecy of grand jury proceedings, the Court will not order the disclosure of the grand jury instructions and declines to inspect them in camera.

The defendant's motion (Doc. No. 25) is denied.

## C. Unconstitutionality of the Statutes

In a set of motions (Doc. Nos.27, 31), the defendant argues that the case against him must be dismissed because 18 U.S.C. § 2422(b) is unconstitutional and 18 U.S.C. § 2423(b) is unconstitutional as applied. The defendant contends that both of the charges against him are based on communications made over the Internet, which he labels as "presumptively protected speech." (Def.'s Mot. to Dismiss Count One at 2.) The defendant cites *Reno v. American Civil Liberties*

*Union*, —— U.S. ——, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) to support this proposition. However, *Reno*, which overturns portions of the Communications Decency Act of 1996 ("CDA"), is easily distinguishable from the present case.

In *Reno*, the Supreme Court held that provisions of the CDA which prohibited sending over the Internet "indecent transmissions" and "patently offensive displays" to minors were unconstitutional abridgements of First Amendment free speech protections. *Id.*, 117 S.Ct. at 2334. The Court found that, in its attempt to protect children with these two provisions of the CDA, Congress effectively suppressed speech in which adults have a constitutional right to engage. *Id.* at 2346.

The CDA differs from the two statutes at issue here, 18 U.S.C. § 2422(b) and 18 U.S.C. § 2423(b), because it regulated the content of communications over the Internet. In contrast, the two statutes involved in the present case do not purport to regulate the content of any speech.

Section 2422(b) makes it illegal to use any means of interstate commerce to persuade a minor to engage in a sexual activity for which anyone may be prosecuted. Section 2423(b) makes it a crime to travel in interstate commerce to engage in a sexual act with a minor that is proscribed by Chapter 109A. In neither of these cases did Congress limit the content of speech.

■ It is true that the method of persuasion addressed by section 2422(b) will usually involve some form of speech, whether the communication is made via Internet, telephone, or mail. However, otherwise criminal conduct is not protected under the First Amendment simply because it involves the use of speech. *United States v. Riggs*, 743 F.Supp. 556, 559–60 (N.D.Ill.1990). If the defendant's argument to the contrary were carried out to its logical conclusion, then the government could not prohibit any activity that involved speech. Yet, that is obviously not correct. *See, e.g., New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (upholding against a First Amendment challenge a New York statute which criminalized the promotion of a sexual perfor-

mance by a child); *United States v. Rowlee*, 899 F.2d 1275 (2d Cir.1990) (upholding a conviction under 18 U.S.C. § 371 for conspiracy to defraud the United States, against a First Amendment challenge), *cert. denied*, 498 U.S. 828, 111 S.Ct. 87, 112 L.Ed.2d 59 (1990); *United States v. Borgese*, 235 F.Supp. 286 (S.D.N.Y.1964) (denying a motion, based on First Amendment speech protections, to dismiss a charge under 18 U.S.C. § 1084 for transmission of wagering information); *Riggs*, 743 F.Supp. 556 (denying a motion, based on First Amendment speech protections, to dismiss an indictment which charged the defendants with the distribution of information which had been stolen from computer files).

Similarly to the cases cited above, the present case involves a statute which does not attempt to regulate the content of speech, but simply criminalizes conduct which incidentally involves speech. Since speech which is the "very vehicle of the crime itself" is not protected by the first amendment, *Rowlee*, 899 F.2d at 1278 (quoting *United States v. Varani*, 435 F.2d 758, 762 (6th Cir.1970)), the Court finds meritless the defendant's argument that 18 U.S.C. § 2422(b) is unconstitutional due to the Supreme Court's holding in *Reno*.

■ The defendant's argument that 18 U.S.C. § 2423(b) is unconstitutional as applied also rests on his reading of the Supreme Court's recent decision in Reno. The statute prohibits a person from traveling in interstate commerce for the purpose of engaging in unlawful sex with a minor. On its face, the statute appears not to implicate first amendment speech protections at all. However, the defendant argues that because his conduct involves speech protected by *Reno*, § 2423(b) is unconstitutional as it has been applied to this situation.

Given the Court's decision that the alleged criminal conduct charged in this case is not protected by the first amendment simply because it involves speech, *Reno* is inapposite to this statute as well. Section 2423(b) prohibits a person from traveling in interstate commerce to engage in unlawful sex with a minor. The fact that the defendant's com-

munications with the alleged minor victim led to the prohibited travel does not make the statute unconstitutional as applied.

For the reasons set forth above, the defendant's motions (Doc. Nos. 27, 31) are denied.

### D. Indictment Fails to Allege Element of Scienter

The defendant further moves the Court to dismiss both counts of the indictment because they fail to allege the constitutionally required element of scienter. (Def.'s Mot. to Dismiss Indictment for Failure to Allege Scienter at 1.) Mr. Kufrovich asserts that neither count of the indictment alleges that he had knowledge of the minority status of the purported victim. (Def.'s Mot. to Dismiss Indictment for Failure to Allege Scienter at 3.) The defendant asserts that both counts of the indictment must allege that the defendant had knowledge of the purported victim's minority status since the statutes under which he is charged regulate the content of protected speech. *Id.* However, as discussed above, these statutes do not regulate the content of speech. Therefore, the defendant's rationale for a scienter requirement is incorrect.

However, even if not constitutionally mandated, a presumption exists that a criminal statute requires some form of scienter. *United States v. X–Citement Video, Inc.,* 513 U.S. 64, 68–69, 115 S.Ct. 464, 467, 130 L.Ed.2d 372 (1994). In *X–Citement Video,* the Supreme Court held that the Protection of Children Against Sexual Exploitation Act of 1977 included the requirement that a defendant must know that one of the performers addressed by the Act was a minor, even though the most natural reading of the statutory language suggested that no scienter element was included. *Id.*

Similarly, § 2422(b) should be read to include a scienter requirement. The statute reads "[w]hoever ... knowingly persuades ... [a minor] to engage in prostitution or any sexual act for which any person may be criminally prosecuted...." Arguably, the language of the statute does not indicate clearly whether Congress intended the knowledge requirement to apply only to the

persuasion employed, or to both the persuasion and the minority status of the victim. However, given the presumption in favor of scienter as articulated in *X–Citement Video,* the Court finds that § 2422(b) requires knowledge of the minority status of an alleged victim.

The defendant argues that Count One of the indictment does not incorporate a scienter requirement of the alleged victim's minority status. (Def.'s Mot. to Dismiss Indictment for Failure to Allege Scienter at 3.) This contention is meritless because the first count tracks the language of 18 U.S.C. § 2422(b). An indictment which tracks the language of a statute is usually sufficient unless it omits an element which is implied, but not expressly mentioned in the statutory language. *United States v. Jackson,* 72 F.3d 1370, 1380 (9th Cir.1995), *cert. denied,* 517 U.S. 1157, 116 S.Ct. 1546, 134 L.Ed.2d 649 (1996). Since the Court holds that § 2422(b) explicitly includes a knowledge element, and the first count of the indictment tracks this language, Count One is sufficient.

The defendant makes the same argument in reference to the second count of the indictment. (Def.'s Mot. to Dismiss Indictment for Failure to Allege Scienter at 3.) It is less clear whether Congress intended to include a scienter element in section 2423(b) which does not include the word "knowingly," although section 2423(a), criminalizing the transportation of a minor in interstate commerce for the purpose of engaging in an unlawful sexual act, does use the term "knowingly."

At least one Circuit has held that § 2423(b) does not contain a scienter requirement for the minority status of an alleged minor victim. *See United States v. Hamilton,* 456 F.2d 171 (3d Cir.1972), *cert. denied,* 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972). The Court need not resolve this issue, because, whether or not § 2423(b) includes a scienter requirement, the corresponding count of the indictment does allege that the defendant had knowledge of the alleged victim's minority status.

Count Two charges that the defendant "knowingly traveled in interstate commerce

for the purpose of engaging in a sexual act ... with a person under 18 years of age." The defendant's argument seems to be that "knowingly" modifies only the verb "traveled" and does not apply at all to the minority status of the alleged victim. (Def.'s Mot. to Dismiss Indictment for Failure to Allege Scienter at 3.)

■ This argument is unpersuasive. If "knowingly" applies only to "traveled" it is a superfluous adjective, since it is difficult to imagine how one could travel in interstate commerce without knowing about it. In order to make sense, "knowingly" must refer to the purpose of the traveler, i.e. to engage in a sexual act with a minor. In order to have the purpose to engage in a sexual act with a minor, a person must know that the object of the plan is indeed a minor. A statute is not to be construed in such a manner as to produce "positively absurd" results. *See X–Citement Video, Inc.*, 513 U.S. at 69. The Court extends this logic to the indictment as well, finding that Count Two of the indictment does incorporate a scienter requirement as to the alleged victim's minority status.

For the aforementioned reasons the defendant's motion (Doc. No. 26) is denied.

E. Impermissible Disjunctive Pleading

The defendant moves the court to dismiss Count One of the indictment on the grounds that it impermissibly pleads in the disjunctive, rather than the conjunctive. Specifically, the defendant asserts that the phrase "to engage in a sexual act for which any person may be criminally prosecuted under federal, state *or* local law" ((Grand Jury Indictment, dated July 9, 1997) (emphasis added)) violates the rule that an indictment must charge in the conjunctive so that the defendant has adequate notice of what offenses the government will try to prove at trial. (Def.'s Mot. to Dismiss Count One for Impermissible Disjunctive Pleading at 2.)

■ When a statute is phrased in the disjunctive, a criminal complaint based on the statute must be worded in the conjunctive. *United States v. McDonough*, 56 F.3d 381, 390 (2d Cir.1995); *United States v. Bader,* 698 F.2d 553, 555 (1st Cir.1983). In the case at bar, § 2422(b) is phrased in the disjunctive; but, not in the way in which the defendant means. This statute makes it a crime to use a means of interstate commerce to persuade *or,* in the alternative, to attempt to persuade a minor to engage in a sexual act for which a person may be criminally prosecuted.

In other words, there are two different ways in which the statute may be violated. A person may be convicted of using a means of interstate commerce to persuade a minor to engage in a sexual act for which any person may be criminally prosecuted or a person may be convicted of using a means of interstate commerce to attempt to persuade a minor to engage in a sexual act for which any person may be criminally prosecuted. A criminal complaint invoking this statute must thus charge a person with both alternatives by using the conjunctive "and." *See McDonough,* 56 F.3d at 390.

■ Count one of the indictment fulfills this requirement. It charges that Mr. Kufrovich "... used a facility or means of interstate commerce, ... knowingly to persuade ... *and* knowingly to attempt to persuade ... a person under 18 years of age, to engage in a sexual act for which any person may be criminally prosecuted under federal, state or local law." (Grand Jury Indictment, dated July 9, 1997.)

The phrase "under federal, state or local law," does not constitute an alternative violation of the statute and therefore, does not fall within the ambit of the rule that a criminal complaint must be pleaded in the conjunctive. The statute states that a person must persuade or attempt to persuade a minor to engage in "any sexual act for which any person may be criminally prosecuted." 18 U.S.C. § 2422(b). This language implies that the sexual act in question must be unlawful, i.e. it must violate either federal, or state, or local law. Therefore, the prepositional phrase "for which any person may be criminally prosecuted under federal, state or local law" in the indictment is simply a description of the sexual act that the person charged must have persuaded or have attempted to

persuade a minor to engage in using a means of interstate commerce.

In fact, it would be improper for the indictment to read "for which any person may be criminally prosecuted under federal, state and local law," because such a statement would no longer correctly reflect the meaning of the statute. Congress used the following language: "*any* sexual act for which any person may be criminally prosecuted ...." 18 U.S.C. § 2422(b). This terminology does not require that the sexual act in question must violate all three levels of law. It need violate only *a* law, either federal or state or local.

That the sexual act in question actually occurred is unnecessary. Section 2422(b) criminalizes the use of a means of interstate commerce knowingly to persuade or to attempt to persuade a minor to engage in an unlawful sexual act. It is the use of a means of interstate commerce knowingly to persuade or to attempt to persuade a minor to engage in unlawful sex that is the crime. By the terms of the statute the sexual act need never have actually occurred. Therefore, the "sexual act for which any person may be criminally prosecuted" is merely a description of the intent element.

That the sexual act violates federal or state or local law is a component of the statute, not a factual element which must be proven by the prosecution. *See United States v. Wynn,* 987 F.2d 354, 358 (6th Cir.1993) (applying this logic to 18 U.S.C. § 1958, the federal murder-for-hire statute, which prohibits the use of any facility in interstate commerce "with intent that murder be committed in violation of the laws of any State or the United States ...").

Legal elements, in contrast to factual elements, may be part of the judge's charge to the jury at the close of a trial. *Id.* This means that, although the government must prove that the defendant used a means of interstate commerce with the intent to persuade or to attempt to persuade the alleged minor victim to engage in an unlawful sexual act, it need not prove that the sexual act violates a law. The Court can make the determination of whether the intended sexual act would actually violate the federal, state or local law(s) the government claims the act would violate.

In sum, FED.R.CRIM.P 7 requires that an indictment "be a plain, concise and definite written statement of the essential facts constituting the offense charged." The validity of an indictment is guided by practical considerations, not technicalities. *United States v. Carter,* 917 F.Supp. 1, 2 (D.D.C. 1995). An indictment is adequate if it fairly informs a defendant of the charges against him so that he may prepare a defense. *Id.*

Count One of the indictment in the present case sufficiently sets forth the specifics of the offense charged. It properly follows federal pleading rules which require that when there is more than one way a statute could be violated, the indictment must plead in the conjunctive. Here, Count One charges that the defendant used a means of interstate commerce knowingly to persuade *and* to attempt to persuade a minor to engage in an unlawful sexual act. Therefore, the indictment properly pleads in the conjunctive. There is no impermissible use of the disjunctive in the descriptive phrase "federal, state or local law." These words merely describe the intent element.

Nor is the defendant left in the dark as to which of these many laws would be violated by the sexual act which he is charged with intending to persuade a minor to engage in. The government informed the defendant in a Bill of Particulars which laws the intended sexual act violates.

For these reasons, the defendant's motion to dismiss Count One of the indictment based on impermissible disjunctive pleading (Doc. No. 29) is denied.

## F. Bill of Particulars

The defendant moves the Court to order the government to provide a Bill of Particulars specifying: (1) what means of interstate commerce were used by the defendant, (2) the content and dates of all communications between the defendant and the alleged minor victim, (3) the specific federal, state or local law for which the alleged sexual act would be subject to criminal prosecution, and (4) the

nature of the alleged sexual act. (Def.'s Mot. for Bill of Particulars at 1–2.)

The government responded to this motion by supplying a Bill of Particulars as to the specific laws violated by the sexual act charged in the indictment. However, as to the remaining three requests, the government objects that they fail to meet the requisite standard of necessity. (Government's Omnibus Resp. at 30.)

■ A Bill of Particulars is required only when the charges set forth in the indictment are so general that they fail to inform the defendant of the specific acts of which he is accused. *Torres,* 901 F.2d at 234. A defendant must possess information specific enough to enable him to prepare an adequate defense, to prevent surprise at trial, and to allow him to plead double jeopardy if that becomes necessary at a later time. *United States v. Murgas,* 967 F.Supp. 695, 702 (N.D.N.Y.1997).

■ In determining whether the defendant has received sufficient specifics to allow him to prepare for trial, a court should consider any information obtained by the defendant through discovery, as well as that contained within the indictment. *United States v. Muyet,* 945 F.Supp. 586, 599 (S.D.N.Y.1996). The government is not required to reveal to a defendant all of the evidence it will produce at trial. *United States v. Feola,* 651 F.Supp. 1068, 1133 (S.D.N.Y.1987), *aff'd,* 875 F.2d 857 (2d Cir. 1989), *cert. denied,* 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989). Indeed, because a Bill of Particulars serves to restrict how the government may present its case at trial, the question is not whether the information sought would be beneficial to the defendant, but whether it is necessary for his defense. *United States v. Young & Rubicam, Inc.,* 741 F.Supp. 334, 349 (D.Conn.1990).

■ The defendant first requests specifics as to the "exact nature" of the means of interstate commerce he allegedly used. (Def.'s Mot. for Bill of Particulars at 1.) Taking into consideration both the indictment and materials the defendant has received in discovery the Court finds that Mr. Kufrovich has been adequately informed in this regard. The indictment claims that the defendant used the telephone wires, Internet, and United States Mail. Furthermore, the government represents in its response to the defendant's motion that he has received copies of letters the alleged minor victim received from him, confirmation of the America On Line account held by the alleged victim's family, as well as copies of various telephone bills of the family. (Government's Omnibus Resp. at 32.)

■ The defendant also asks for the exact dates and contents of communications between himself and the alleged minor victim. (Def.'s Mot. for Bill of Particulars at 1.) These details lie outside the range of information to which the defendant is entitled. A Bill of Particulars may not be used as a tool to get an advance view of the government's evidentiary theory. *Torres,* 901 F.2d at 234.

■ Finally, the defendant seeks information on the exact nature of the sexual act referred to in both counts of the indictment. (Def.'s Mot. for Bill of Particulars at 2.) The Court finds that the defendant already has received adequate information as to the nature of the sexual act mentioned in the indictment. In Count One, the sexual act is defined by federal, state, or local law. The government provided a Bill of Particulars which reveals which laws the government claims would have been violated by the sexual act involved. The Court finds that the defendant needs no further specification of the sexual act referred to in Count One in order to prepare an adequate defense. Forcing the government to provide more details would serve only to unduly restrict the government's presentation of its case. *See Young & Rubicam, Inc.,* 741 F.Supp. at 349.

Count Two of the indictment tracks the language of § 2423(b), which states that 18 U.S.C. § 2246 defines the unlawful sexual act referred to in the statute. For the same reasons discussed in the preceding paragraph in reference to Count One of the indictment, the Court finds that the defendant is not entitled to a further particularization of the sexual act referred to in Count Two.

The Court concludes that the defendant has received sufficient information in the in-

dictment and discovery materials to allow him to prepare adequately for trial. To require the government to provide the further details the defendant requests would unfairly restrict the government's trial preparation.

For these reasons, the defendant's Motion for a Bill of Particulars (Doc. No. 30) is denied.

### G. Severance of Counts: Impermissible Joinder

The defendant moves the Court to sever the two counts of the indictment, asserting that the "gravamen of each proposed offense are sufficiently dissimilar as to make them separate offenses." (Def.'s Mot. to Sever Counts at 3.) Therefore, the defendant claims, the two counts are impermissibly joined.

Multiple offenses may be charged in the same indictment if they are "of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." FED.R.CRIM.P. 8(a). Joinder is permitted when there is an overlap of participants and acts, *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir.1989), so that the same evidence constitutes proof for each count. *United States v. Amato*, 15 F.3d 230, 236 (2d Cir.1994); *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir.1991).

In the present case, the defendant attempts to differentiate between the two counts of the indictment on the grounds that the act upon which the first count is based is communication, while the second count is based on the act of travel. (Def.'s Mot. to Sever Counts at 2.) This characterization is too narrow. Rule 8(a) does not require that each count of an indictment address identical acts to permit joinder. Instead, the rule states that different acts may form the basis of multiple counts as long as they are connected or are part of a common plan or scheme.

The Court finds that the acts involved in each count in this case are components of a common plan or scheme. The government charges the defendant with communicating with a minor in order to persuade her to engage in an unlawful sexual act and with traveling to meet the same minor with the purpose of engaging in an unlawful sexual act. "Any 'reasonable person would easily recognize the common factual elements that permit joinder.'" *Attanasio*, 870 F.2d at 815 (quoting *United States v. Turoff*, 853 F.2d 1037, 1044 (2d Cir.1988)).

Evidence will overlap substantially as the government attempts to prove each count. (Government's Omnibus Resp. at 17.) If the government were required to go to trial twice, many witnesses would be inconvenienced as the government would present nearly identical cases in both trials. Rule 8(a) is partially premised on the notion of trial economy and convenience to conserve judicial and prosecutorial resources. *United States v. Werner*, 620 F.2d 922, 928 (2d Cir. 1980).

The Court concludes that joinder of the two counts is permissible under FED. R.CRIM.P. 8(a), since the acts on which they are each based are components of a common plan, requiring substantially identical evidence to prove. However, even when joinder is permissible, the Court may order the counts severed under FED.R.CRIM.P. 14 if joinder would prejudice the defendant. Under Rule 14 the defendant has a heavy burden to demonstrate that joinder would result in "substantial prejudice." *Amato*, 15 F.3d at 237. In his motion for severance, Mr. Kufrovich does not make a case for substantial prejudice. Therefore, the Court does not consider this matter.

The Defendant's Motion to Sever Counts (Doc. No. 33) is denied.

### H. Change of Venue

The defendant moves the Court to transfer this case to the Northern District of Texas or the Central District of California, arguing that venue is improper in the District of Connecticut for the second count of the indictment.

The United States Constitution mandates that a criminal trial may only be held in the " 'State and district wherein the crime shall

have been committed.'" *United States v. Anderson*, 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946) (quoting U.S. CONST. amend. VI). This requirement is incorporated into the Federal Rules of Criminal Procedure, Rule 18, which directs that a criminal prosecution must occur in a district where the offense was committed. Any exception must be provided by statute or the Criminal Rules.

 When Congress fails to specify in the statute on which the charge is based where venue should lie, the courts are left to determine exactly where the crime charged was committed. In making this determination, a court must consider the nature of the crime and the location of its constituent act or acts. *Id.* If a crime is comprised of a single, discrete act, for purposes of venue, it is committed in the district where the act occurred. *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989), *cert. denied*, 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989). However, if the crime is continuous in some way, it may fall under 18 U.S.C. § 3237(a).[3]

 When more than one location is implicated, venue may properly lie in more than one district. *United States v. Reed*, 773 F.2d 477, 480 (2d Cir.1985). The government must prove by a preponderance of the evidence that venue is proper in the district in which the indictment was returned. *United States v. Naranjo*, 14 F.3d 145, 146 (2d Cir. 1994), *cert. denied*, 511 U.S. 1095, 114 S.Ct. 1862, 128 L.Ed.2d 484 (1994). In the Second Circuit, the test for determining venue is a "substantial contacts" rule. *Reed*, 773 F.2d at 481. This test incorporates the following four factors: (1) the site of the defendant's acts; (2) the nature and elements of the crime charged; (3) the location of the effects of the criminal conduct; and (4) the district's suitability for factfinding. *Id.*

 In the present case, the defendant is charged in Count one with using a means of interstate commerce, including the mail, to persuade or to attempt to persuade a minor to engage in an unlawful sexual act. For this count, venue is clearly proper in the District of Connecticut since § 3237(a) expressly states that for an offense involving the use of the mails, venue lies in any district into which the mail is sent. Given the clear applicability of this statute to the charge in Count One of the indictment, the Court finds that venue is proper in the District of Connecticut as to Count One. The Court will therefore, consider the other *Reed* factors in reference to Count Two only.

 The defendant is charged in Count Two with traveling in interstate commerce for the purpose of engaging in an unlawful sexual act with a minor. The defendant allegedly traveled from California to Texas to meet the minor involved. The defendant did not travel, from, to, or through Connecticut. The first *Reed* factor, therefore, suggests that venue should not lie in Connecticut. However, the Court's inquiry does not end there because the other three factors are also important and "often give sites other than where the acts occurred equal standing so far as venue is concerned." *Id.*

The second *Reed* factor is the nature and elements of the crime. One element of the charge in Count Two is the mens rea requirement of intent. In order to be convicted under the statute, § 2423(b), the defendant must have traveled with the purpose to engage in an unlawful sexual act with a minor. The government contends that the defendant formed this intent during his long distance relationship with a minor living in Connecticut. The defendant allegedly estab-

---

**3.** Sec. 3237(a) provides:
 Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
 Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

lished this relationship through communications with the girl through the mail, the Internet, and the telephone. The nature of this crime, in other words, is more complex than the simple act of traveling from California to Texas.

In order to establish the intent element, the government must prove the purpose of the defendant's travel. The defendant's purpose is inextricably tied into his relationship with the alleged minor victim, which involves communication between California and Connecticut. Therefore, although venue more obviously lies in California or Texas, as the beginning and end points of travel, the second *Reed* factor does not wholly militate against Connecticut, given that the element of intent implicates activities which occurred in this state.

The third *Reed* factor, the location of the effects of the criminal conduct, weighs heavily in Connecticut's favor in the venue determination. Because the alleged minor victim is a Connecticut resident that state would most greatly bear the burden of the effects of the crime charged. It is important that citizens of a state may feel certain that crimes conducted against their fellow state citizens will be penalized. *United States v. McDonald,* 740 F.Supp. 757, 765 (D.Alaska 1990). This sentiment is particularly strong when the victim of criminal conduct is a minor child. Therefore, this factor strongly supports the District of Connecticut as a proper site for this trial.

The final *Reed* factor, suitability for accurate factfinding, also tips the scale in Connecticut's favor. The defendant attached the government's witness list to his motion to show how few witnesses reside in Connecticut as compared to California or Texas. However, the government responded that their key witnesses, besides law enforcement personnel, are the alleged victim, her family, and fellow members of the school swim team who accompanied her to Texas. (Government's Omnibus Resp. at 9.) These people are all Connecticut residents. Therefore, it appears that extensive factfinding must be conducted in Connecticut.

Balancing these four factors together leads the Court to conclude that Connecticut ful-fills the constitutional requirements for venue in this case. Having established that venue properly lies in Connecticut, the Court now turns to the issue of convenience. A court may transfer a case to another court of proper venue for the convenience of the parties or witnesses. FED.R.CRIM.P. 21(b).

The defendant asserts that the Federal District Court in New Haven, Connecticut is inconvenient for him for several reasons. First, he argues that he lives and owns a business in California. He also contends that many witnesses must travel from Texas, California, or Florida. Finally, he suggests that New Haven is not easily accessible.

As to the first consideration, the Court agrees with Mr. Kufrovich that it may be more difficult to run a California business from Connecticut than California. However, the Court notes that the trial will produce inconvenience to the defendant's business, no matter where it is held. Also, it is not at all clear that California is the next best site for the trial if the Court were to transfer it out of Connecticut. Texas might prove the better choice, yet Texas would be no less convenient for the defendant's business.

The defendant's second concern involves the witnesses. The Court regrets that witnesses must be inconvenienced for this trial; however, such inconvenience is inevitable. Since potential witnesses reside in California, Texas, Florida, Connecticut, and Germany, many of them will be required to travel no matter where the trial is held. The government represents that its principle witnesses are Connecticut residents. The defendant indicates that it will call witnesses from various locales. There is no easy way to measure who should be least inconvenienced. However, the Court notes that several of the Connecticut witnesses are minor children. Holding the trial in Connecticut will be least disruptive to their school attendance. Therefore, if the convenience of the witnesses weighs in favor of any location, it is Connecticut.

Finally, the defendant claims that New Haven is inaccessible. The Court hastens to assure the defendant that New Haven is not

difficult to locate. Although Tweed–New Haven Airport is small, two major airlines (USAir and Continental) serve the airport with multiple daily flights. Anyone traveling to New Haven need do nothing more complicated than change planes en route. No matter where the trial were held it is very possible that a change of planes would be necessary to reach the destination. Therefore, the Court believes that New Haven is no less accessible than other locations.

The Court concludes that the government has met its burden to prove that venue properly lies in the District of Connecticut. In addition, considerations of convenience do not strongly undercut Connecticut as a suitable location for the defendant's trial.

For these reasons, the defendant's motion for a change of venue (Doc. No. 35) is denied.

### I. Suppression

The defendant moves the Court to suppress all items seized during the search of his home at 24831 Alexandra Court, Calabasas, California, on April 16, 1997. The defendant contends that the search warrant lacked sufficient probable cause, that the search warrant failed to specify the items sought with the requisite particularity, and that the law enforcement officers who executed the search went beyond the scope of the warrant, thereby creating an illegal general search. (Def.'s Mot. to Suppress.)

First, the defendant contests the validity of the search warrant based on an alleged lack of probable cause. In determining whether a warrant was sufficiently supported by probable cause, the reviewing court considers the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983), *reh'g denied,* 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.,* 462 U.S. at 232. A magistrate or judge deals with probabilities, not technicalities, when deciding whether to issue a warrant. *Id.* at 231. The standard, therefore, is less exacting than "beyond a reasonable doubt" or "by a preponderance of the evidence." *Smith,* 9 F.3d 1007, 1012 (2d Cir.1993).

Instead, the issuing judge makes a "practical, common-sense decision" whether, given the circumstances, there exists a fair probability that evidence of a crime will be discovered in a particular place. *Gates,* 462 U.S. at 238. A reviewing court should show substantial deference to a probable cause determination made by a detached and neutral judge, resolving any doubts in favor of upholding the warrant. *United States v. Rosa,* 11 F.3d 315, 326 (2d Cir.1993), *cert. denied,* 511 U.S. 1042, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994).

The Court finds that the affidavit in the present case provides ample probable cause to support the issuance of a search warrant of the defendant's home. The affidavit details an investigation by the Federal Bureau of Investigation ("FBI") of Mr. Kufrovich. The investigation includes information given to the FBI by the alleged minor victim indicating the existence of a relationship spanning six months between the child and the defendant pursued over the Internet, the mails, and telephone. A review of the defendant's telephone records revealed that he had received numerous calls from the phone numbers corresponding to the minor's home.

Moreover, the affidavit described an encounter between the alleged minor victim and the defendant in a hotel room in Irving, Texas. During the investigation of this incident the defendant showed officers from the Irving Police Department his California driver's licence with the address of the residence searched and admitted to officers that he had been alone in his hotel room with the alleged victim. The affidavit also explained the reasons the investigating agents believed they would find evidence of criminal activity in the defendant's home. The Court concludes that the judge who issued the search warrant could find sufficient probable cause given the totality of the circumstances set forth in the supporting affidavit.

The defendant next argues that the search warrant fails to meet the heightened stan-

dard of particularity required when "speech related materials" are seized. (Def.'s Mot. to Suppress at 5.) The defendant cites *Marcus v. Search Warrants,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127, (1961) and its progeny, *see, e.g., Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989); *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); *Lee Art Theatre, Inc. v. Virginia,* 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), for the proposition that a search warrant for obscene publications must meet a heightened standard of particularity in that the items to be seized must be identified specifically. *See, e.g., Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431 (1965), *reh'g denied,* 380 U.S. 926, 85 S.Ct. 879, 13 L.Ed.2d 813 (1965) (holding that the particularity requirement of the Fourth Amendment must be "accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain.").

The flaw in the defendant's argument lies in his characterization of the items which the search warrant authorized the law enforcement personnel to seize. The basis for the seizure of the computers, correspondence, notebooks, etc. is not the "ideas which they contain." *Id.* Instead, the items sought constitute possible evidence of a violation of 18 U.S.C. § 2422(b), which makes it a crime to use any means of interstate commerce to persuade or to attempt to persuade a minor to engage in an unlawful sexual act.

By its nature this statute involves communication between persons, since the government must establish the existence of a relationship between a defendant and a minor child to prove a violation. It does not necessarily follow, however, that First Amendment protections are triggered. When there is probable cause to believe that the items listed in a search warrant were used in criminal activity, they may be seized notwithstanding the fact that they may contain expressive written content. *Frisby v. United States,* 79 F.3d 29, 32 (6th Cir.1996). First Amendment rights are not implicated when the materials to be seized are sought as evidence of a crime rather than for their

content; therefore, the "scrupulous exactitude" test articulated in *Stanford* does not apply. *United States v. Stelten,* 867 F.2d 446, 450 (8th Cir.1989), *cert. denied,* 493 U.S. 828, 110 S.Ct. 95, 107 L.Ed2d 59 (1989).

However, even when heightened particularity is not necessary, the search warrant must still reflect sufficient particularity so that the law enforcement officers who execute it are not granted impermissible discretion in determining what items are to be seized. *See United States v. Dzialak,* 441 F.2d 212, 216 (2d Cir.1971), *cert. denied,* 404 U.S. 883, 92 S.Ct. 218, 30 L.Ed.2d 165 (1971).

The defendant contends that language in the warrant authorizing a search for "depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256." (Def.'s Mot. to Suppress at Exhibit A, p. 2), gave too much discretion to the police officers who executed the search. (Def.'s Mot. to Suppress at 5.) At least one Circuit, however, has held that this definition of child pornography in a search warrant meets even a heightened standard of particularity. *See United States v. Weber,* 923 F.2d 1338, 1343 (9th Cir.1990).

Since the Court has ruled that a heightened standard of particularity is not required in this case, there is no need to decide whether to follow the Ninth Circuit's lead to that extent. The Court finds that the language used in the search warrant described the items to be seized with adequate particularity, given that no heightened standard was required. Therefore, the warrant did not grant too much discretion to the executing officers.

Finally, the defendant argues that the search went beyond the scope of the warrant, thus creating an illegal general search. Law enforcement officers conducting a search must adhere strictly to the limitations set by the search warrant. *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927), *reh'g denied,* 277 U.S. 613, 48 S.Ct. 206, 72 L.Ed. 1016 (1928). A search must be confined to the items named in the warrant, instrumentalities of a crime discovered during the search, and property to which a special rea-

son for seizure attaches, such as officers' safety. *Dale v. Bartels*, 732 F.2d 278, 284 (2d Cir.1984).

■ The defendant claims that the officers conducting the search went beyond the scope of the warrant by "rummaging at will among files and personal papers, as well as seizing computers to rummage through [later]." (Def.'s Mot. to Suppress at 18.) Beyond this conclusory statement, however, the defendant fails to offer any evidence that the executing officers transformed the search into a "general exploratory seizure...." *Id.* at 19.

The defendant's argument that the executing officers went beyond the scope of the warrant because they rummaged at will through papers is unpersuasive, since, in any search for documents, innocuous records must be examined to determine whether they fall into the category of those papers covered by the search warrant. *Andresen v. Maryland*, 427 U.S. 463, 482 n. 11, 96 S.Ct. 2737, 2749 n. 11, 49 L.Ed.2d 627 (1976).

As for the computers, they were specified in the warrant as items to be seized. Therefore, the defendant's contention that the officers executing the search warrant went beyond the scope of the warrant by seizing them is meritless. Certainly, many of the files found on the computer did not constitute evidence in this case. However, an appendix to the search warrant explained that, because information may be easily hidden in a computer, it is necessary to seize the entire system to search adequately for files that might contain relevant information. (Def.'s Mot. to Suppress at Exhibit A, p. 4.) Under those circumstances, seizure of the computers was not beyond the scope of the warrant.

In sum, the Court concludes that suppression of the items seized from the defendant's residence is unwarranted. First, the supporting affidavit set out sufficient probable cause for the judge who issued the search warrant to find that there was a fair probability that evidence of the specified crimes would be found at the defendant's house. Furthermore, the description in the search warrant of the items to be seized was adequately particularized, leaving the executing officers no discretion in the decision as to what was to be seized. Finally, the defendant failed to demonstrate that the law enforcement officers who executed the search warrant went beyond the scope of the warrant.

For these reasons, the Defendant's Motion to Suppress (Doc. No. 36) is denied.

## II. Conclusion

The defendant's pre-trial motions (Doc. Nos.23, 25–27, 29–31, 33, 35, 36) are denied.

**SO ORDERED.**